[Crim. No. 16541. In Bank. May 16, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
PEDRO ORTIZ VARGAS, Defendant and Appellant.

## COUNSEL

Frank L. Williams, Jr., Public Defender, James R. Goff, David W. Duncan and James J. Barnett, Deputy Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Herbert L. Ashby, Chief Assistant Attorney General, William E. James, Assistant Attorney General, Derald E. Granberg and Jay M. Bloom, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BURKE, J.**—Defendant appeals from a conviction of robbery (Pen. Code, § 211) following trial by jury. He asserts that prejudicial error occurred at trial, namely, two separate violations of the rule which forbids any adverse comment upon the exercise of his right to remain silent at trial. (See *Griffin* v. *California,* 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229].) We have concluded that although *Griffin* error occurred, that error was harmless beyond all reasonable doubt, in view of the relatively minor nature of the error and the overwhelming evidence of defendant's guilt. Accordingly, we affirm the conviction.

The robbery victim, Mr. Olness, testified that on the day in question (June 29, 1971) he attended the La Paloma restaurant for dinner, carrying with him $147 in cash. Mr. Olness, who was 60 years old and suffering from cancer, had difficulty remembering many of the details surrounding the offense but in general he testified as follows: After his meal, Olness pulled out a "roll" of bills from his pocket and paid his dinner bill. He noticed that his cane was missing, and thereafter two men approached him and told him the cane was at one of their houses. Olness (who confessed that he was a "fool" to flash his money and then to follow these men outside) walked out of the restaurant with these men. One of them grabbed Olness, who fell to the ground; the other man, whom Olness identified as defendant Vargas,[1] went through his pockets

---

[1] At a pretrial lineup, Olness identified defendant with some hesitation, explaining that defendant was wearing a goatee and sideburns when he robbed Olness, but was clean shaven at the lineup. At trial Olness stated that he was "positive" that defendant had robbed him. However, he admitted that his certainty was reinforced by the fact that a witness, Miss Campio, pointed out Vargas to him as his assailant. Nevertheless, Olness insisted that he independently recognized Vargas, stating that "when I get a good look at a man, I will never forget a man or a woman."

and took his money. Olness testified that it was dark when the robbery occurred. After the robbery, Olness returned to the restaurant, reported the incident, and then went home. He called the police who, according to Olness, met him back at La Paloma. Four or five days later, Olness returned to La Paloma, where one of the restaurant employees, Trini Rubio Campio, pointed out to him two men (defendant Vargas and his co-defendant Medina) whom she believed were the robbers. The police were called in and defendant and Medina were arrested.

Miss Campio also testified for the prosecution. Although she spoke only Spanish, her testimony was translated into English by an interpreter. Miss Campio stated that she is an employee of La Paloma, and that on the day in question she observed Mr. Olness, a regular customer, leave the restaurant after his dinner. Miss Campio also left the restaurant, to return to her apartment. Once outside, a small girl (the four-year-old child of another La Paloma employee) called to her. She saw Mr. Olness with two men in a vacant lot near the restaurant. The two men were defendant "Pete" Vargas and John Medina. Miss Campio identified defendant and explained that she had been acquainted with him and Medina for two or three months, as customers of La Paloma. In Miss Campio's words, "John—I knew him less because I had seen him in there three or four times. *Pete I saw quite often."* (Italics added.) Miss Campio testified she was "absolutely positive" that the two men she saw were defendant and Medina.

According to Miss Campio, Mr. Olness was "[t]hrown on the ground" when she first observed him, and defendant, who was leaning over him, made a grabbing motion with his hand toward the side of Olness' pants pocket. Miss Campio "did not know what he [defendant] took, if anything." She said in a loud voice to defendant and Medina, who were approximately 25 feet away, "Do not run. You will pay for it. I saw you." The men said nothing, but walked away from the area.

Neither Mr. Olness nor Miss Campio were positive that the incident occurred on June 29. Moreover, although Mr. Olness recalled that it was dark at the time, Miss Campio believed that it was still light. Miss Campio also thought that she had seen defendant in the restaurant nearly every day during the 10 days prior to June 29. A police witness testified, however, that defendant had been in jail on another charge until June 29.

Miss Campio testified that she did not immediately report the incident to the police because she had no phone, and couldn't speak English. According to Miss Campio, a few days after the robbery, Olness returned to La Paloma and, using "sign language" pointed out defendant Vargas to her, and she replied "Yes."

Defendant and codefendant Medina chose not to testify and presented no defense, by way of alibi or otherwise. During his closing arguments to the jury, counsel for Medina apparently[2] explained to the jury that the defendants were under no compulsion to testify. Thereafter, during the prosecutor's closing argument, the prosecutor agreed that defendants did not have to take the stand, but he inquired, "Why didn't they have some witnesses to say where they were on the 29th, on the evening of the 29th. They had to be somewhere . . . ." (No claim is made that these remarks constituted error.) Thereupon, a conference in chambers was held and the court cautioned the prosecutor against commenting further "as to the context of the defendants not taking the stand, why weren't witnesses called as to where they were, what they were doing . . . ."

The prosecutor thereupon completed his closing remarks, including the following: "And ladies and gentlemen, there is no evidence whatsoever to contradict the fact that Mrs. Rubio [Campio] saw Mr. Vargas and Mr. Medina over Mr. Olness. *And there is no denial at all that they were there.* The defendants are guilty beyond any reasonable doubt . . . ." (Italics added.)

Thereupon, defense counsel requested a further conference in chambers, during which they contended that the prosecutor's statement constituted *"Griffin"* error, justifying a mistrial. The court acknowledged that the question of error was "awfully close," but asked defense counsel if an admonishment to the jury would "satisfy" them. Counsel agreed to withdraw their motion for mistrial "if the Court makes a strong admonishment and states that type of argument is improper." Thereafter, the court admonished the jury to "disregard completely" the prosecutor's statement "regarding there being a failure to deny the defendants being there." The court explained that in a criminal case, the burden is on the prosecution, that defendants have a right to rely upon the state of the evidence at the close of the People's case, that they have a constitutional right not to take the stand, and that the jury should not draw any inferences of guilt from defendants' failure to testify.

Immediately thereafter, the court instructed the jury on the law, reading to them various instructions previously submitted by the parties. Among these instructions were CALJIC Nos. 2.60 and 2.61, which, ac-

---

[2]That portion of the transcript which contains the jury arguments of defense counsel has not been made part of the record in this case. However, recorded colloquy between the trial judge and counsel in chambers indicates that Medina's counsel initiated the discussion regarding defendants' failure to testify.

cording to the record, were requested by one or both of the defendants.[3] These instructions read as follows:

CALJIC No. 2.60: "It is a constitutional right of a defendant in a criminal trial that he may not be compelled to testify. Thus the decision as to whether he should testify is left to the defendant, acting with the advice and assistance of his attorney. You must not draw any inference of guilt from the fact that he does not testify, nor should this fact be discussed by you or enter into your deliberations in any way."

CALJIC No. 2.61: "In deciding whether or not to testify, the defendant may choose to rely on the state of the evidence and upon the failure, if any, of the People to prove every essential element of the charge against him, and no lack of testimony on defendant's part will supply a failure of proof by the People so as to support *by itself* a finding against him on any such essential element." (Italics added.)[4]

Defendant now contends that the prosecutor's comment upon defendant's failure to "deny" the robbery, coupled with the suggestion (in CALJIC No. 2.61) that defendant's failure to testify may, when supported by other evidence of guilt, be considered by the jury, constituted reversible error. We agree that error was committed in this regard, but we find it harmless in view of its limited nature, and the overwhelming evidence against defendant.

1. *Prosecutor's Misconduct*—Under the rule in *Griffin* v. *California, supra,* 380 U.S. 609, error is committed whenever the prosecutor or the court comments upon defendant's failure to testify. (See *People* v. *Modesto,* 66 Cal.2d 695, 710-711 [59 Cal.Rptr. 124, 427 P.2d 788].) However, not every comment upon defendant's failure to present a defense constitutes *Griffin* error. ■ It is now well established that although *Griffin* prohibits reference to a defendant's failure to take the stand in his own defense, that rule "does not extend to comments on the state of the evidence or on the failure of the defense to introduce material evidence or to call logical witnesses. [Citations.]" (*People* v. *Burns,* 270 Cal.App.2d 238, 247 [75 Cal.Rptr. 688]; accord, *People* v. *Smith,* 22 Cal.App.3d 25, 32-33 [99 Cal.Rptr. 171]; *People* v. *Bethea,* 18 Cal.App. 3d 930, 936 [96 Cal.Rptr. 229]; *People* v. *Chandler,* 17 Cal.App.3d 798, 805-806 [95 Cal.Rptr. 146]; *People* v. *Grant,* 268 Cal.App.2d 470, 475 [74 Cal.Rptr. 111].) For example, in *Bethea* (p. 936), the

---

[3]The clerk's transcript indicates that these instructions were "requested by defendant," but nowhere does the record disclose which defendant made the request.

[4]CALJIC No. 2.61 has now been amended to delete the italicized words.

prosecutor made a closing argument which summarized the evidence against defendant and commented that " '[t]he state of the record is that *there has been no explanation* given for this [the People's evidence of guilt] . . . .' " (Italics added.) The court held that "[t]here is absolutely no reference to the fact that defendant did not take the stand; nor is the remark susceptible of such interpretation by inference or innuendo."[5]

At first glance, the words in *Bethea* appear substantially identical to the words at issue herein, namely, "there is no denial at all that they were there [robbing Mr. Olness]." Yet we believe that, although the question is close, the *Bethea* case is distinguishable. In the present case, the word "denial" connotes a personal response by the accused himself. Any witness could "explain" the facts, but only defendant himself could "deny" his presence at the crime scene. Accordingly, the jury could have interpreted the prosecutor's remarks as commenting upon defendant's failure to take the stand and deny his guilt.

Other cases in this area confirm our analysis. In *People* v. *Gioviannini,* 260 Cal.App.2d 597, 604-605 [67 Cal.Rptr. 303], the court found *Griffin* error when the prosecutor commented upon defendant's alleged admission to a police officer, stating that " '[t]he defendant, in his own words spoken to Sergeant Wrona, there is no denial of those words, *with the defendant present,* . . .' " (Italics added by the court.) Similarly, in *People* v. *Northern,* 256 Cal.App.2d 28, 30-31 [64 Cal.Rptr. 15], the court found *Griffin* error in the prosecutor's statement that the People's evidence " 'has not been refuted by the Defendant . . . .' " (See also *People* v. *Modesto, supra,* 66 Cal.2d 695, 711 [prosecutor's comment that defendant knows the facts, and is sitting in the courtroom, " 'and just sitting.' "]; *People* v. *Ham,* 7 Cal.App.3d 768, 778-779 [86 Cal.Rptr. 906] [trial judge commented that defendant was in the best position to explain certain facts]; *People* v. *Crawford,* 253 Cal.App.2d 524, 535-536 [61 Cal.Rptr. 472] [prosecutor's comment that " '[t]he only thing we have heard from the defendant is this roundabout story from these relatives' "].)

It is quite possible that the prosecutor in this case only intended to point out to the jury that the defense had introduced no evidence to show that defendant or Medina were elsewhere during the robbery. Yet the language used by the prosecutor was sufficiently ambiguous in this respect to lead us to conclude that *Griffin* error was committed. We

---

[5]Thus, under the rule in *Bethea,* the prosecutor's initial comments, set forth above, regarding the lack of alibi witnesses was not *Griffin* error.

analyze the question of the prejudicial effect of this error after reviewing an additional claim of *Griffin* error.

2. *Error in Jury Instructions*—Defendant contends that CALJIC No. 2.61, set forth above, improperly permitted the jury to consider defendant's failure to testify in appraising his guilt or innocence. The People argue forcefully that CALJIC No. 2.61 accurately sets forth the "truism" that "the failure of a defendant to testify will not 'by itself' supply what the prosecution has failed to do—present the evidence necessary to convict . . . ."  ▮  Yet, although this interpretation of the instruction was undoubtedly the intent of its framers, an ordinary juror reading it might assume that if the People have presented some evidence of guilt, the defendant's silence can then be considered as supplementing the People's case. Such an instruction would, of course, violate *Griffin* principles.

The Second District of the Court of Appeal, in two recent cases, has held that the giving of CALJIC No. 2.61, as it read in this case, was *Griffin* error. (*People* v. *Williams,* 22 Cal.App.3d 34, 45-46 [99 Cal.Rptr. 103]; *People* v. *Townsend,* 20 Cal.App.3d 919, 923-925 [98 Cal.Rptr. 8].) As stated in *Williams* (p. 45), "By this [instruction], the jurors were told, in effect, that they could not infer from the circumstance that defendant did not testify that a certain thing was true and use this alone as the support for a finding on their part that an element of the crime or an indication of guilt had been proved, but that they could use such inference along with other evidence to support such a finding. This demeaned the force of the preceding instruction [CALJIC No. 2.60, also given in the instant case] which had stated that they must not draw any inference of guilt. For despite that instruction they are being told that they *can* draw an inference from defendant's silence if they can use it along with some other evidence. This was error. [Citation.]" We agree that *Griffin* error was committed.

Although the record indicates that CALJIC No. 2.61 was requested by "defendant," the record does not disclose whether defendant Vargas or codefendant Medina requested the instruction. Rather than rely upon a presumption that Vargas requested the instruction (see *People* v. *Vanderbogert,* 66 Cal.App. 408, 409 [226 P. 35]; cf. *People* v. *Cebulla,* 137 Cal. 314, 317 [70 P. 181]), and thereupon face the difficult question whether invited error occurred (compare *People* v. *Nye,* 63 Cal.2d 166, 173 [45 Cal.Rptr. 328, 403 P.2d 736], with *People* v. *Graham,* 71 Cal.2d 303, 317-320 [78 Cal.Rptr. 217, 455 P.2d 153]), we assume arguendo that the *Griffin* error was uninvited, for we believe that such error (together with the prosecutor's indirect comment upon defendant's failure to testify) was harmless beyond a reasonable doubt.

3. *Prejudicial Effect of Griffin Errors—* ▮ The applicable test for determining whether an error which violates federal constitutional principles is reversible error is set forth in *Chapman* v. *California,* 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065], wherein the court held that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." This determination "must be based on our own reading of the record and on what seems to us to have been the probable impact of the . . . [errors] on the minds of an average jury." (*Harrington* v. *California,* 395 U.S. 250, 254 [23 L.Ed.2d 284, 287-288, 89 S.Ct. 1726].)

First of all, apart from the state of the evidence in this case, we note that the type of *Griffin* errors involved here are of a much less direct, and accordingly much less serious, nature than the *Griffin* errors present in most of the cases which have found such error prejudicial and grounds for reversal. For example, in *Griffin* itself, the prosecutor *and* the court had directly informed the jury that, in appraising defendant's guilt, it could take into consideration defendant's failure to testify. Similar error was committed in *Chapman* v. *California, supra,* 386 U.S. 18, *In re Banks,* 4 Cal.3d 337, 348-349 [93 Cal.Rptr. 591, 482 P.2d 215], and *People* v. *Haston,* 69 Cal.2d 233, 254-255 [70 Cal.Rptr. 419, 444 P.2d 91].

Thus, this court has noted that in determining whether prejudicial *Griffin* error has occurred, "we must focus upon *the extent to which the comment itself might have increased the jury's inclination to treat the defendant's silence as an indication of his guilt.* The risk that a comment will have this effect may become considerable if either the court [fn. omitted] or the prosecution [fn. omitted] 'solemnizes the silence of the accused into evidence against him' . . . by telling the jury 'that from the failure of [the defendant] to testify . . . the inferences from the facts in evidence [should] be drawn in favor of the State.' . . . A forbidden comment, however, is less likely to affect the 'substantial rights' of a defendant . . . if that comment merely *notes* the defendant's silence and includes no suggestion that, among the various inferences which might be drawn therefrom, those unfavorable to the defendant are the more probable. As the court pointed out in *Griffin,* absent such a suggestion 'the inference of guilt is not always so natural or irresistible.' . . . We do not mean to imply that a prohibited comment is necessarily or even ordinarily harmless so long as it is unaccompanied by a statement that silence implies guilt; we simply note that the absence of any such statement tends to mitigate the independently damaging effect of a comment uttered in

violation of the *Griffin* rule." (Italics in original; *People* v. *Modesto,* 66 Cal.2d 695, 713 [59 Cal.Rptr. 124, 427 P.2d 788].)

In *Modesto, supra,* the prosecutor committed error in pointing out to the jury that the defendant, who knew the facts, was sitting in the courtroom, "and just sitting." Neither the prosecutor nor the court in its instructions told the jury that an inference of guilt might be drawn from defendant's silence. In finding harmless error only, we stated, "Thus we do not deal here with what the *Chapman* court characterized as 'a machine-gun repetition of a denial of constitutional rights, all designed and calculated to make [defendant's] version of the evidence worthless. . . .'" (66 Cal.2d at p. 714.)

We made a similar observation in *People* v. *Morse,* 70 Cal.2d 711 [76 Cal.Rptr. 391, 452 P.2d 607], wherein the prosecutor commented upon defendant's silence and the court instructed the jury that an unfavorable inference could be drawn against defendant for his failure to deny or explain prosecution evidence. We noted in *Morse* that the prosecutor's comment "was brief and mild and not uttered with 'machine-gun repetition' and devastating effect as in *Chapman.*" (P. 730.) Moreover, in context, the court's instruction, though erroneous, was of minimal significance. (*Id.*)

As in the *Modesto* and *Morse* cases, the prosecutor's remark here ("There is no denial at all that they were there") was brief and mild, and amounted to no more than an indirect comment upon defendant's failure to testify without suggesting that an inference of guilt should be drawn therefrom. Moreover, the trial court, at defendant's request, promptly admonished the jury and carefully explained to them that no adverse inferences were to be drawn from defendant's silence.

The erroneous instruction (CALJIC No. 2.61) was no more devastating in effect than the prosecutor's comment, for the error was buried within an otherwise proper instruction, and was preceded by another instruction (CALJIC No. 2.60) which correctly set forth defendant's constitutional right to remain silent, and the further principle that no adverse inferences could be drawn from his silence. The error which was committed was certainly less substantial than the errors in earlier cases, cited above, wherein the jury had been instructed that it *could* consider defendant's failure to testify.

The cases which have considered the prejudicial effect of errors similar to those committed in the instant case almost uniformly have found those errors to be harmless. (See *People* v. *Morse, supra,* 70 Cal.2d 711, 729-

730; *People* v. *Modesto, supra,* 66 Cal.2d 695, 712-714; *People* v. *Ross,* 67 Cal.2d 64, 73 [60 Cal.Rptr. 254, 429 P.2d 606]; *People* v. *Townsend, supra,* 20 Cal.App.3d 919, 925 [CALJIC No. 2.61]; *People* v. *Ham, supra,* 7 Cal.App.3d 768, 784; *People* v. *Burns, supra,* 270 Cal. App.2d 238, 249; *People* v. *Gioviannini, supra,* 260 Cal.App.2d 597, 604-605; *People* v. *Northern, supra,* 256 Cal.App.2d 28, 30-31; *People* v. *Crawford, supra,* 253 Cal.App.2d 524, 535-536.) The one exception appears to be *People* v. *Williams, supra,* 22 Cal.App.3d 34, 46, wherein (as here) indirect prosecution comment upon defendant's failure to testify was combined with the giving of CALJIC No. 2.61. In *Williams,* however, the *Griffin* error was aggravated by "a breakdown in legal representation [by defense counsel] which substantially reduced the strength of defendant's claim of total diminished capacity" (p. 50), together with *three* erroneous instructions regarding intent, insanity and unconsciousness.

Moreover, in *Williams* (as in all of the decisions we have reviewed which reversed convictions for *Griffin* error), "the decision [as to defendant's guilt] was a close one." (P. 39; see p. 46, fn. 11.)[6] Accordingly, the court could not say beyond a reasonable doubt that the combination of errors committed in that case was harmless. (P. 58.) In the instant case, however, the case against defendant was overwhelming: The defense presented no alibi witnesses or other exculpatory evidence, and defendant was positively identified as one of the robbers by the victim and an eyewitness. The victim, Mr. Olness, was evidently quite confused regarding the time and circumstances of the robbery,[7] yet he remained unshaken regarding his identification of defendant. Miss Campio was even more positive that defendant was one of the robbers, for she actually had *known* defendant ("Pete") for some time prior to the incident. Her

---

[6]For example, in *Chapman* v. *California, supra,* 386 U.S. 18, 24, the evidence against defendants was wholly circumstantial. In *In re Banks, supra,* 4 Cal.3d 337, the eyewitness' identifications were tainted by a suggestive lineup, the descriptions did not closely match defendant, there was no evidence that defendant was preparing to commit a robbery, defendant's actions differed from the modus operandi of the suspected robber, and defendant was able to explain satisfactorily the presence of cash in his pockets, the denominations of which failed to match those taken by the robber. In *People* v. *Haston, supra,* 69 Cal.2d 233, defendant presented an alibi defense, was able to rebut other prosecution evidence, and the witnesses to the crime did not see the robbers' faces, since they wore masks.

[7]Olness, whose confusion may be explained by the unfortunate state of his health, believed that the robbery occurred in darkness, although Miss Campio testified that the sun was still out. Many of the details given by Olness regarding events immediately *following* the robbery were contradicted by the testimony of the officer who answered Olness' call to report the robbery. None of these inconsistencies however, pertained to the occurrence of the robbery itself.

prior acquaintance with defendant made wholly irrelevant her apparent error in believing that defendant had been frequenting the La Paloma restaurant during the 10 days prior to the robbery.

This court has stated that, in order for *Griffin* error to be prejudicial, the improper comment or instruction must either "serve to fill an evidentiary gap in the prosecution's case," or "at least touch a live nerve in the defense, . . ." (*People* v. *Modesto, supra,* 66 Cal.2d 695, 714; see *People* v. *Morse, supra,* 70 Cal.2d 711, 730.) In the instant case, the errors complained of could not conceivably have served either function. (See also harmless error cases, *supra,* pp. 479-480, many of which emphasize the failure of the defendant to present a credible, or any, defense.) We conclude that, on the basis of the record before us, the *Griffin* errors at issue could have had no significant impact upon the jurors and were harmless beyond a reasonable doubt.[8]

The judgment of conviction is affirmed.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Sullivan, J., and Clark, J., concurred.

---

[8]Defendant also contended on appeal that the trial court erred in not entertaining during the course of trial defendant's motion to suppress a photograph of codefendant Medina used by the People to refresh Miss Campio's memory regarding Medina's facial hair at the time of the robbery. (Evidently, Medina had shaved off his moustache subsequent to the robbery.) This photograph was a jail "mug shot" arising from a prior arrest of Medina; defendant evidently sought to show that Medina's arrest was illegal, and that this photograph was the unlawful fruit of that arrest and hence inadmissible. Subsequent to the trial of this case, however, we decided *People* v. *McInnis,* 6 Cal.3d 821 [100 Cal.Rptr. 618, 494 P.2d 690], and held that the People may use as evidence in a subsequent, unrelated trial a photograph taken following an earlier illegal arrest. Accordingly, defendant's motion was without merit.