Betty Jo BOYD, Appellant
(Defendant below),

v.

STATE of Wyoming, Appellee
(Plaintiff below).

No. 4308.

Supreme Court of Wyoming.

Nov. 18, 1974.

Edward P. Moriarity, Urbigkit, Moriarity, Halle & Mackey, Cheyenne, for appellant.

David B. Kennedy, Atty. Gen., David A. Kern, Asst. Atty. Gen., Cheyenne, for appellee.

Before PARKER, C. J., and McEWAN and GUTHRIE, JJ.

Mr. Chief Justice PARKER delivered the opinion of the court.

Defendant, a black female, was charged in two indictments with the March 6, 1973, violation of § 35–347.31(a)(i) and § 35–347.16(b)(4), W.S.1957, 1973 Cum.Supp., one indictment being for the unlawful possession with intent to deliver, and the other with delivery of cocaine. Both indictments were under the name of Betty Jo Jackson, which name was charged but amended at the instance of her attorney at the time of arraignment to Betty Jo Boyd. After numerous preliminary motions and rulings, defendant was tried by a jury, convicted on both indictments, but sentenced only for the offense of delivery to two and a half to three years in the Nebraska State Reformatory for Women. She has appealed, urging several errors which will be discussed separately.

### Denial of Motion to Dismiss the Indictments

The first charge of error is that the court denied the motion to dismiss which urged that the indictments were fatally defective. Incidentally, it is suggested here that defendant was charged under the wrong name; but any criticism by her

for that reason could be given little weight since as above noted the record shows that her counsel moved for the change of name at the time of her arraignment and was allowed to do so. Moreover, the change of name being only one of form and not of substance was permissible without the request. Dye v. Sacks, 6 Cir., 279 F.2d 834, 837; United States v. Owens, D.Minn., 334 F.Supp. 1030, 1031.

■ The burden of defendant's motion to dismiss seemed to be that the offense was not sufficiently charged to enable her to prepare a defense and avoid possible double jeopardy in subsequent proceedings as well as to substantiate that charging her on both indictments constituted double jeopardy. It is notable that the defense filed numerous motions, including those to discover. In all fairness it could not be said that there was any doubt about the crime with which defendant was charged, and certainly she could have ascertained by discovery had there been any question regarding this matter. Moreover, where the charge follows the statutory language and such language contains all that is essential to constitute the crime, the indictment is sufficient. State v. Callaway, 72 Wyo. 509, 267 P.2d 970, 971; State v. Hickenbottom, 63 Wyo. 41, 178 P.2d 119, 125. We held in Crouse v. State, Wyo., 384 P.2d 321, 325, that it was only necessary to allege sufficient to allow the accused to understand the charge and prepare his defense. The court exercised its proper discretion in overruling the motion.

### Double Jeopardy

■ Defendant continues to emphasize here a point pursued in the trial court, that the prosecution on two indictments which grew out of the same offense was prejudicial to her and constituted double jeopardy. No extended discussion of this aspect is warranted since this court has recently had occasion to address itself to like matters. Jackson v. State, Wyo., 522 P.2d 1356, 1359–1360; Dorador v. State, Wyo., 520 P.2d 230, 231–232. While prosecution of the two charges does not constitute double jeopardy, we have heretofore held that if a person is charged with delivery of a controlled substance and possession of the same substance with intent to deliver the latter is embraced in the former. Jackson v. State, supra, 522 P.2d at 1359–1360. Consequently, the verdict and portion of the judgment relating to possession with intent to deliver must be reversed.

### Challenge of the Array of Jury Panel

■ No written challenge was made to the jury panel, but at the beginning of the trial in August 1973 counsel raised two questions regarding it, one that there was not a black on the jury panel, and a second, that there had been no list of trial jurors compiled as required by § 18–142.1, W.S.1957, 1973 Cum.Supp., a statute which had been passed and approved the preceding March. Adverting to the first point, the gist of defendant's contention is that there had been in the past years only a few blacks on juries in Laramie County and that there were none on this panel. She recognizes our holdings in Simms v. State, Wyo., 492 P.2d 516, 520, and Lofton v. State, Wyo., 489 P.2d 1169, 1171–1172, but seemingly contends that they were improper decisions and should be reversed since they place too great a burden upon defendant to show that there has been a systematic exclusion of blacks from jury service solely because of color. In so arguing she suggests that we have misinterpreted Norris v. Alabama, 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074. We have again reviewed Norris as well as Alexander v. Louisiana, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536; Whitus v. Georgia, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599, and Hopkins v. State, 254 Miss. 484, 182 So.2d 236. None of these deal with situations similar to the one at bar and none of them indicate that merely because no blacks are on a jury panel there is a presumption of systematic and intentional exclusion because of color. We again call attention to Fay v. New York, 332 U.S. 261, 284, 67 S.Ct. 1613, 1626, 91 L.Ed. 2043 (as we did in Lofton,

489 P.2d at 1171–1172), where it was said, "It is fundamental in questioning the composition of a jury that a mere showing that a class was not represented in a particular jury is not enough; there must be a clear showing that its absence was caused by discrimination * * *." We adhere to our view expressed in Simms v. State, supra, 492 P.2d at 520 (n. 2), where we indicated that the simplest method by which any defendant could challenge a jury as being selected by systematic and intentional exclusion of any group of persons would be to present the names of various persons who were entitled to be on the jury list and whose names were not contained thereon. This would impose no great burden and would permit the one claiming to be denied a fair trial a workable method for meeting the above-mentioned prerequisite of Fay.

■ As to the insistence that there was some defect in the jury panel because it was constituted from the list as required to be established by Wyoming law prior to May 25, 1973, the argument is specious, being based upon the contention that the statute required a certain jury list to be compiled within ninety days after the adjournment of the session of the legislature at which the law was enacted. The statute reads that the county clerk should deliver the list "on or before the second Monday of January of each year." The trial was held in August following the passage of the Act, and the statute did not require its mandate to be fulfilled until the following January.

### Impartiality and Fairness of the Jury

■ Defendant argues that she was denied a trial which met the standards of fundamental fairness as established by the Fourteenth Amendment to the United States Constitution because the jury impaneled for the case had previously been required to pass upon the credibility of a portion of the State's case in a trial immediately preceding the trial at bar. In that respect she contends that one Joe Dorador was tried and convicted in the court prior to her case, the members of the jury panel being the same for the two cases; and she points out that in the voir dire in her trial various questions were asked of potential jurors as to their being influenced by what had happened in the earlier case. She moved for a continuance and, if that should not be granted, that the members of the panel who had served on the Dorador case be excused. Both motions were denied and the voir dire proceeded. Some of the jurors who had served previously indicated that they might be influenced and in each such instance the juror was excused for cause. When the jury was finally selected, four persons who had sat in the Dorador case remained, each having stated positively that he would not be affected by what he had previously heard. It is of some moment to note that after both the State and the defendant had exercised their peremptory challenges a number of persons were still available on the panel. Defendant's objection to the court's ruling on this aspect seems to be grounded in the view that there was an implied prejudice arising from the fact that the jurors had served on the Dorador case. While such a concept has not been without its adherents,[1] it has been largely rejected.[2] Under the circumstances disclosed by the record, we find that the trial court did not abuse its discretion in denying defendant's challenge of the jury panel.

### Insufficiency of the Evidence

Lastly, defendant says she was denied a fair and impartial trial, due process of law, and that there was insufficient legally

---

1. See the dissent in Casias v. United States, 10 Cir., 315 F.2d 614, 619, 620, certiorari denied 374 U.S. 845, 83 S.Ct. 1901, 10 L.Ed.2d 1065.

2. " * * * the courts have decided that a juror's prejudice must be proved, not merely implied, when he serves at the separate trials of different defendants who are tried upon charges which are similar but which arise out of separate and distinct transactions." United States v. Haynes, 2 Cir., 398 F.2d 980, 984.

competent evidence to sustain her conviction. This attack combines several criticisms but is said to rely on four aspects, namely, the county attorney in an opening statement was allowed to refer to clearly inadmissible testimony and informed the jury he intended to call certain witnesses, indicating what they would say, when in fact he had no intention in doing so and made no attempt to prove all of the material points brought out in his opening statement; the court failed to be fair and impartial, certain comments assisting the prosecution in the trial; the defendant was denied the right to fully confront all witnesses against her and to put on certain relevant and material evidence; and there was insufficient legally competent evidence to sustain the conviction.

■■■ At the time the defendant objected to the State's opening remarks, emphasizing particularly the fact that one mentioned witness was not even called, the court responded:

> " * * * we'll let the evidence develop whatever the truth is. Opening statement is only what the state expects to prove. The jury is told that it is not evidence, and the court is going to overrule your objection."

Whether remarks of the State's attorney in a criminal matter are improper rests largely in the sound discretion of the trial court, United States v. Medlin, 6 Cir., 353 F.2d 789, 795, certiorari denied 384 U.S. 973, 86 S.Ct. 1860, 16 L.Ed.2d 683.

Before the case went to the jury, the court instructed:

> "Arguments, statements, and remarks of counsel are intended to help you in understanding the evidence and applying the law, but are not evidence. If any counsel has intimated by any of his questions that certain hinted facts are, or are not true, you must disregard any such intimation and must not draw any inference from it. If any argument, statement, or remark has no basis in the evidence, then you should disregard that argument, statement or remark."

Any misstatement made by the prosecution in its opening would not seem to have been prejudicial but rather by discussing matters about which later proof was lacking the State would make itself vulnerable as to credibility and fairness. In any event, the noted instruction was sufficient to cure error if it existed, the jury being told to disregard remarks of counsel. People v. Hillery, 62 Cal.2d 692, 44 Cal.Rptr. 30, 38–39, 401 P.2d 382, 390–391, certiorari denied 386 U.S. 938, 87 S.Ct. 958, 17 L.Ed.2d 810; Gray v. People, 139 Colo. 583, 342 P.2d 627, 630. We find no prejudice in this aspect.

■■■ The charge that the trial court "failed to be fair and impartial" is serious and one which counsel should not lodge without complete justification. Although allowance for the excitement and stress of a trial has a place in an objective evaluation of such a criticism, we find the charge to be without merit. Rather our analysis of the objections, colloquies, and rulings in this instance reveals that the court was merely trying to move the case along in the proper administration of justice when motions, objections, and interruptions of defense counsel, perhaps well intentioned for client's benefit, nevertheless fell little short of impeding the progress of the trial.

In discussing this facet, we do not overlook the present contention that at the trial defendant was not able to examine or cross-examine on certain matters. However, we note from a review of the testimony that in each instance where such examination was requested evidence on the subject had been already placed before the jury so that additional coverage would have been unwarranted repetition.

■■■ In the overall contention that there was insufficient legally competent evidence to convict the defendant of the charges against her, emphasis is placed upon the fact that there was a disparity in the evidence regarding her height and weight. An investigator, Ramirez, placed her at 5 feet 6 inches, 105 pounds, whereas she was actually much taller and heavier.

These variations, which raise the question of her identity and go to the credibility and weight of Ramirez's testimony, were matters solely within the province of the triers of fact, as was the color of her hair.

 Among other things, it is asserted on the authority of Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, that the county attorney in final argument commented improperly on defendant's failure to take the stand, the words to which objection is registered being, "Can anybody say that she was not there? There's no evidence that she was not there. There is evidence that she was there. And that's all of the evidence that is before this jury, that is, sworn testimony that she was there and she transferred for $120 in federally recorded funds two spoons of cocaine." This argument overlooks the well established refinement of the rule stated in Griffin that although the prosecution may not make reference to defendant's failure to take the stand in his own defense the rule " 'does not extend to comments on the state of the evidence or on the failure of the defense to introduce material evidence or to call logical witnesses.' " People v. Vargas, 9 Cal.3d 470, 108 Cal.Rptr. 15, 18, 509 P.2d 959, 962.[3]

Our review and analysis of the record considered in the light of the questions raised on appeal fail to convince us that there was prejudicial error in the rulings of the court, that there was insubstantial evidence to sustain the conviction, or that defendant did not have a fair and impartial trial.

The verdict and portion of the judgment relating to possession with intent to deliver is reversed. The conviction for "delivery of cocaine" and the judgment thereon are affirmed.

Reversed in part; affirmed in part.

3. State v. Aguirre, 84 N.M. 376, 503 P.2d 1154, 1160; State v. Berryman, 106 Ariz. 290, 475 P.2d 472, 476; Moss v. State, 88 Nev. 19, 492 P.2d 1307, 1309.