Filed 2/16/21  P. v. Martinez CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　　　v.<br><br>JUAN ANTHONY MARTINEZ,<br><br>　　Defendant and Appellant. | B301401<br><br>(Los Angeles County<br>　Super. Ct. No. VA149434) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Michael A. Cowell, Judge.  Affirmed.

Patrick J. Hoynoski, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Britton B. Lacy, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Defendant and appellant Juan Anthony Martinez was found guilty of one count of possession of methamphetamine for sale and one count of transporting methamphetamine and sentenced to four years in state prison. The sole issue on appeal is whether the prosecutor made statements during closing argument that improperly shifted the burden of proof to defendant. We conclude defendant forfeited the contention and therefore affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

On the evening of December 2, 2018, Los Angeles County Deputy Sheriff David Pantoja was on patrol in the city of Norwalk. He pulled defendant over for a traffic stop. Defendant was driving a car registered in his name and had three passengers with him. At some point, defendant and his passengers were ordered out of the car. Six baggies of a substance later determined to be methamphetamine were found in the car, plus $760 in cash and two cell phones. One baggie was visible on the center console, and the other baggies were in a box on the floor. The money and one phone were found in defendant's pockets, and the other cell phone was on the driver's seat. No pipes or other drug paraphernalia were found in the car and none of the occupants appeared to be under the influence of any drug at the time of the stop.

Deputy Pantoja read defendant his rights and defendant agreed to speak with him. Defendant said the drugs were his, that he intended to sell them and that none of his passengers was involved or had knowledge of the drugs.

Defendant was charged with one count of possession for sale of a controlled substance (methamphetamine) (Health & Saf. Code, § 11378; count 1) and one count of transportation of a

controlled substance (methamphetamine) (Health & Saf. Code, § 11379, subd. (a); count 2). It was also alleged defendant had suffered a prior conviction of a serious or violent felony (criminal threats) within the meaning of the "Three Strikes" law (Pen. Code, § 667, subds. (b)-(j), § 1170.12).

A jury trial was held in September 2019. Deputy Pantoja testified to the above facts. Detective Christopher Conley, a narcotics officer, explained that a total of 44.55 grams of methamphetamine was found in defendant's car. A usable quantity or dose of methamphetamine is 0.02 grams. Even assuming someone used a gram a day, the quantity found in defendant's car was enough for over 40 days. In Detective Conley's experience, the quantity and individual packaging were consistent with defendant possessing the drugs for sale. Further, individuals who sell narcotics often carry two cell phones, one to engage in sales with customers and the other for personal use.

Defendant testified and said he first started using drugs around the age of nine. On the night of December 2, 2018, he was going to a party with his friends and was bringing the methamphetamine for use at the party. He said the money in his pocket was a recent withdrawal from a former girlfriend's account to pay for rent because he was on unemployment at the time. He denied telling Deputy Pantoja that all the drugs were his or that he was planning to sell them. Defendant also said Deputy Pantoja was wrong to say there were no pipes in the car because there were three in the center console. Defendant said Deputy Pantoja allowed one of his passengers to take the pipes.

The jury found defendant guilty as charged.

In a bifurcated proceeding, defendant admitted his prior strike. The court granted defendant's oral motion to strike the

3

prior conviction pursuant to Penal Code section 1385.  The court acknowledged counsel's argument that while the prior strike was 18 years old and warranted being stricken, defendant still had a record of several other drug-related convictions spanning several years.  The court imposed a four-year upper term on count 2 and imposed and stayed the low term on count 1.  The court awarded defendant 60 days of presentence custody credits and imposed various fines and fees.

This appeal followed.

## DISCUSSION

Defendant contends the prosecutor committed misconduct by making statements during closing argument that shifted the burden of proof to him to prove reasonable doubt.  Defendant did not object in the trial court to the statements he now seeks to challenge on appeal.  The contention has therefore been forfeited. "It is well settled that making a timely and specific objection at trial, and requesting the jury be admonished . . . is a necessary prerequisite to preserve a claim of prosecutorial misconduct for appeal." (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1328; accord, *People v. Bonilla* (2007) 41 Cal.4th 313, 336 & *People v. Davenport* (1995) 11 Cal.4th 1171, 1209.)  We are not persuaded the record shows that an objection and request for admonition would have been futile.  Defendant has not shown any persuasive basis for excusing his forfeiture.

Moreover, even were we to consider the contention on its merits, we would reject it.  Our Supreme Court has explained that we must consider a prosecutor's argument as a whole and in context. (*People v. Lucas* (1995) 12 Cal.4th 415, 475.)  A defendant challenging a prosecutor's remarks before the jury "must show that, '[i]n the context of the whole argument and the

4

instructions' [citation], there was 'a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner.  [Citations.]  In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.  [Citation.]' " (*People v. Centeno* (2014) 60 Cal.4th 659, 667.)

Here, during cross-examination of defendant, the prosecutor elicited testimony showing defendant was still in touch with at least one of the friends who was in the car with him when he was pulled over for the traffic stop and the former girlfriend from whom he said he got the money.  He argued the jury should question defendant's credibility because he did not call them to corroborate his testimony.  The jury was properly instructed that the People have the burden to prove guilt beyond a reasonable doubt (CALJIC No. 2.90) and that they were to disregard any comments about the law by the attorneys that differed from the court's instructions (CALJIC No. 1.00).  The jury was also given CALJIC No. 2.62 which, in relevant part, told the jury that "[i]n this case defendant has testified to certain matters.  [¶] . . . [¶]  The failure of a defendant to deny or explain evidence against him does not, by itself, warrant an inference of guilt, nor does it relieve the prosecution of its burden of proving every essential element of the crime and the guilt of the defendant beyond a reasonable doubt."

The prosecutor also told the jury that "[i]t is my job to prove this case.  It is my job alone.  You will never hear me argue otherwise.  [¶]  But just because I have the burden of proof, doesn't mean I got to sit back, hands behind my back and let the

defendant lie.  I get to question him.  It's called something on [*sic*] the law called the failure to call logical witnesses."

The prosecutor then used a hypothetical, asking the jury to consider the credibility of a defendant who chooses to take the stand to assert an alibi that lacks corroboration.  "If he gets up on the stand and testifies that this is what happened, but there is zero evidence to back that up, you treat his testimony the same way you treat all the other testimony."  Later on, the prosecutor reiterated the burden of proof was his alone, but when a defendant testifies, the jury still must assess the credibility of the defendant's testimony and purported alibi.  "[W]hen a defendant testifies, you question his testimony the exact same way you question everybody else's."

It is "well established that although *Griffin* [*v. California* (1965) 380 U.S. 609] prohibits reference to a defendant's failure to take the stand in his own defense, that rule '*does not extend to comments on the state of the evidence or on the failure of the defense to introduce material evidence or to call logical witnesses.* [Citations.]' "  (*People v. Vargas* (1973) 9 Cal.3d 470, 475, italics added; accord, *People v. Bradford* (1997) 15 Cal.4th 1229, 1340 ["A distinction clearly exists between the permissible comment that a defendant has not produced any evidence, and on the other hand an improper statement that a defendant has a duty or burden to produce evidence, or a duty or burden to prove his or her innocence."].)

The prosecutor here did not assert or suggest that defendant had any affirmative duty, burden or obligation to produce evidence of any kind.  The prosecutor permissibly argued the jury should consider defendant's credibility in light of his failure to call logical witnesses to support his defense.

## DISPOSITION
The judgment of conviction is affirmed.


                GRIMES, J.

WE CONCUR:


                BIGELOW, P. J.


                STRATTON, J.