638

[*Crim. No. 14530. Second Dist., Div. One. July 1, 1968.*]

THE PEOPLE, Plaintiff and Respondent, v. RONALD
COOK, Defendant and Appellant.

Joseph Amato, under appointment by the Court of Appeal,
for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James,
Assistant Attorney General, and Mark L. Christiansen, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—A jury found defendant guilty of attempted robbery, first degree (§ 664, Pen. Code); he appeals from the judgment.

Around 8 p.m. on December 17, 1966, Gilbert Murray, manager, Ralph's Grocery, saw Isaac Green enter the store. A few minutes later he was called from his office by Yoshia Sakamoto, a cashier, to the checkstand booth for customer service; she told him that a man (Marshand) wanted to see him. Murray talked to Marshand, turned around and saw Green who had come up behind him carrying a chrome "Western-type" long gun. Green pressed the gun against Murray's back and said, "All right. All right. All right."; as Murray started to raise his hands Green said, "Don't put your hands up"; Marshand repeated it. Murray began to lower his arms and Green fired a shot into his back; Murray asked Green, "Why did you shoot me?" Green did not reply but ran to the booth, stuck his gun in and said, "I want money, lady. I want some money, money. I want some money." Mrs. White, a checker in her checkstand about 12 to 15 feet away, had heard loud talking and arguing; she looked up and saw the manager and two men, one of whom was Green; a few minutes later she heard a shot, looked up again and saw defendant standing next to her cash register; defendant pointed his gun at her and in a somewhat excited voice told her not to move, then left. Rene Cagnollitti, a shopper, saw Green with the gun in his hand and heard the manager ask him why he had shot him. Miss Burrell, a checker, saw the manager and Green with gun in hand. Mrs. Keyes, another checker, heard a shot, looked up and saw defendant with a small gun in his hand; she started toward the exit and saw defendant in the aisle; holding the gun, defendant told everybody to "get back, get back." Green returned to Murray who was lying on the floor, put his gun to Murray's face and ordered him to get up and open the safe; Murray tried but could not get up. Someone said, "Let's go, let's go," and the last Mrs. Keyes saw defendant was when he left the store.

Defendant denied that he attempted to rob Ralph's or was present when someone else tried. He offered an alibi defense— that he was a member of a singing group which practiced every evening from 7 o'clock for five weeks preceding a recording date on December 19, 1966, and he attended all rehearsals. Defendant and several witnesses testified that at the time of the robbery attempt he was at the home of one of the members for rehearsal. He and Green both lived at the

same address but Green was not a member of the group rehearsing that night.

▮▮▮ Based on his alibi testimony and what he believes to be fatal weaknesses in the identification testimony of Mrs. White and Mrs. Keyes, appellant in a purely factual argument contends that the evidence is insufficient to support the verdict. He points out that Mrs. White only saw the man she identified as him for a very short time, she was excited, a gun was pointed toward her face and the man had a hat pulled down close to his eyebrows, and that Mrs. Keyes, after the man told her to get back, did not pay any more attention to him; and argues that neither witness had the opportunity or time to make a reliable identification rendering their testimony "utterly unbelievable."

Two eyewitnesses positively identified defendant as one of the men who attempted to rob Ralph's Grocery, while a third first identified him as being there, then said she was not certain. Mrs. White, a checker, testified that she heard a shot and looked up; defendant stood right next to her cash register just slightly to the front of her right side, pointed a gun at her and told her in an excited tone of voice not to move; she could not say how long he stood there—it was closer to a minute than a second—but no more than a minute. She was questioned thoroughly concerning the exact length of time she observed defendant but Mrs. White could only say a "short period of time," "maybe a minute." She positively identified defendant as the man she saw in the store at the time of the robbery attempt; she testified that there is no doubt in her mind about the fact that defendant was that man, she has a good memory for faces and definitely saw defendant's face. Mrs. White further testified that she has worked as a cashier all of her life and has been taught to observe certain things under certain circumstances, and trained in what to look for in such situations. An effort was made to cast doubt on her positive identification of defendant but without success; defense counsel even tested her ability to recall what she had seen by asking her to close her eyes and describe him and what he was wearing, which she did. Loretta Keyes, another checker, also positively identified defendant; as she walked toward the exit she saw him in the aisle with a gun which she described as stubby and smaller than Green's; she heard defendant tell everybody to get back, so she stood back; she last saw him as he was running from the store. Later Mrs. Keyes identified defendant for the police. A third witness,

Clairice Burrell, testified first that she saw defendant put the gun over Yoshia; later she said, "I am not certain."

 Before a judgment may be set aside, it must be made to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion of the trier of fact. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].) Viewing the evidence in a light most favorable to the judgment and assuming the existence of every fact reasonably deducible from the evidence (*People* v. *Sweeney,* 55 Cal.2d 27, 33 [9 Cal.Rptr. 793, 357 P.2d 1049]), we find no grounds upon which to reverse the judgment.

 The record before us reflects ample evidence in support of the jury's findings that defendant was one of the three men who attempted to rob Ralph's Grocery. Two employees present during the robbery attempt positively identified him, another said she thought she had seen him, although she was not certain. Any claimed weakness in the identification testimony because of the time involved or the conditions under which the witnesses observed defendant was a matter for argument to the jury and cannot be effectively urged on appeal. (*People* v. *Williams,* 53 Cal.2d 299, 303 [1 Cal.Rptr. 321, 347 P.2d 665]; *People* v. *Farrington,* 213 Cal. 459, 463 [2 P.2d 814]; *People* v. *Sloan,* 223 Cal.App.2d 96, 98-99 [35 Cal.Rptr. 519].) Further, the factual conflict created by the alibi testimony of defendant and his witnesses was also a matter for the jury to resolve; its determination will not be disturbed on appeal. A reviewing court may not reweigh the evidence or reject the jury's finding on the credibility of witnesses or set aside its determination of fact. (*People* v. *Perez,* 58 Cal.2d 229, 237 [23 Cal.Rptr. 569, 373 P.2d 617, 3 A.L.R.3d 946]; *People* v. *Hillery,* 62 Cal.2d 692, 702 [44 Cal.Rptr. 30, 401 P.2d 382].) In these circumstances, appellant's challenge to the sufficiency of the identification evidence cannot prevail. (*People* v. *Williams,* 53 Cal.2d 299, 303 [1 Cal.Rptr. 321, 347 P.2d 665].)

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.