[Crim. No. 7661. Third Dist. Sept. 2, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES LEON ROBERTS, Defendant and Appellant.

COUNSEL

Alan M. Caplan, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Willard F. Jones and Peter J. McBrien, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**PUGLIA, P. J.**—Defendant appeals following conviction by jury of second degree murder. (Pen. Code, § 187.) The jury also found that in the commission of the offense, defendant used a firearm, a .22 caliber revolver. (Pen. Code, § 12022.5.) Prior to trial defendant entered a plea of guilty to a related charge of being a convicted felon in possession of a concealable firearm. (Pen. Code, § 12021.) Defendant was sentenced to state prison for each offense but execution of sentence was stayed on the conviction for violation of Penal Code section 12021.[1]

---

[1]Neither the minutes of the proceedings at judgment and sentence nor the abstract of judgment mention the finding under Penal Code section 12022.5. We do not have the oral proceedings at pronouncement of judgment and sentence before us and are therefore unable to determine whether the omission to mention Penal Code section 12022.5 in the written record is the result of clerical or judicial error. If the former, the error can be corrected at any time by the trial court on its own motion or upon application of the parties. (*In re Candelario* (1970) 3 Cal.3d 702, 705 [91 Cal.Rptr. 497, 477 P.2d 729].)

Defendant's appeal challenges only the murder conviction. Our review of the record persuades us that defendant's assignments of error must be rejected and the conviction affirmed.

## FACTS

On December 2, 1973, defendant was employed as a guard at the Laura Scudder processing plant at Tracy, California. At approximately 1 a.m., Joseph Machado, age 16, came to the guard shack at the plant to see defendant. Defendant was there with the victim, Allen McClelland, whom he introduced to Machado as his "buddy."

A few minutes later defendant, accompanied by his two companions, went on a routine inspection of the buildings. McClelland had a bottle of whiskey from which he took occasional drinks as the trio toured the premises. He imbibed to the point that he staggered and had difficulty standing. He also became quite voluble, talking incessantly to Machado.

Soon after completing the rounds and returning to the guard shack, it became apparent that McClelland's constant conversation had taken its toll on defendant. The two exchanged irritable words during which McClelland assumed a fighting stance, offering encounter to defendant. Defendant kicked McClelland several times about the chest, unholstered his gun, cocked it and shook it at McClelland, telling him that if he wanted a fight, he (defendant) would "whoop" him again. With his gun out, defendant stated, "Don't try to fight me or I'll shoot you." McClelland demurred and defendant returned his gun to its holster.

McClelland then announced that he wanted to talk with Machado, but defendant admonished that he, Machado, had no interest in conversation. McClelland turned toward defendant and again assumed a pugnacious stance, whereupon defendant unholstered his gun, stepped forward with arm extended and fired one shot into McClelland.

Machado went to his car. Before he could start it, defendant approached and told him that McClelland was going to die and that he and Machado should have consistent stories to the effect that McClelland had tried to attack him (defendant) with a pipe.

A pipe was in the victim's hand when officers arrived at the scene. Machado testified that McClelland did not have anything in his hand at the time of the shooting. Machado had seen the pipe earlier inside the guard shack.

In response to a telephone call, officers arrived at the plant at approximately 1:30 a.m. The victim was dead, lying on the ground with the pipe in his left hand. (The victim was right-handed.) Cause of death was a gunshot wound in the neck. At the scene of the shooting, Officer Crowder noticed an odor of alcoholic beverage on defendant's breath. As a result he tested defendant on an intoxilizer at the police station. Two samples were taken showing a .11 and .12 blood alcohol level. Crowder noticed no impairment of defendant's ability to communicate or otherwise function. Defendant told Crowder that he had had a couple of beers. Machado testified that defendant staggered as he walked, and in his opinion defendant had had more than one beer.

## INSTRUCTIONS

■ Defendant asserts that it was error for the trial court to refuse to instruct on the relationship of diminished capacity occasioned by voluntary intoxication to the offense of involuntary manslaughter. The trial court instructed upon diminished capacity in the context of first and second degree murder and voluntary manslaughter. Additionally, the jury was instructed on statutorily defined manslaughter, voluntary (Pen. Code, § 192, subd. 1) as well as involuntary (Pen. Code, § 192, subd. 2).[2] Furthermore, the jury was told that the elements of malice aforethought and intent to kill could both be negated by evidence of voluntary intoxication.[3] Considering the latter instruction in conjunction with other instructions given which correctly defined the elements of murder and manslaughter, the jury could reasonably conclude only that if malice

[2]The court gave instruction No. 8.45 of California Jury Instructions—Criminal (1970 ed.) (hereinafter CALJIC), defining involuntary manslaughter essentially in the language of Penal Code section 192; CALJIC No. 846, defining the phrase "without due caution and circumspection;" and the verbatim language of Penal Code section 417, brandishing a firearm in a rude, angry or threatening manner, advising the jury that such offense constituted a misdemeanor inherently dangerous to human life within the meaning of the definition of involuntary manslaughter upon which the jury was instructed.

[3]At defendant's request the trial court gave CALJIC No. 4.21 (as adapted) instructing that the jury should consider defendant's state of intoxication in determining whether he had the specific intent to kill with malice aforethought and, if the evidence raised a reasonable doubt as to his capacity to form such specific intent, the jury must find for defendant on that issue. The giving of the foregoing instruction rendered harmless the trial court's disregard of defendant's request that it instruct in the language of CALJIC No. 8.48, which enlarges upon CALJIC No. 8.45 by relating the potential effect of mental illness, mental defect or intoxication upon the mental capacity to harbor malice aforethought and to form an intent to kill. In any event, the only evidence suggesting diminished capacity was of defendant's voluntary consumption of alcoholic beverages shortly before the shooting.

aforethought and intent to kill were both negated, the defendant could not be found guilty of either murder or voluntary manslaughter.[4] Had the jury arrived at that point, it would undoubtedly have reached an impasse, floundering around in a legal no-man's-land, because it was not explicitly told of the equation of voluntary intoxication with criminal negligence (want of "due caution and circumspection") when an unlawful killing is committed by one who is intoxicated to a degree sufficient to negate both malice aforethought and intent to kill albeit not to a degree so acute as to cause unconsciousness. The failure so to instruct may be ascribed to the total lack of evidence of defendant's unconsciousness coupled with the rule expressed in cases such as *People v. Roy* (1971) 18 Cal.App.3d 537 [95 Cal.Rptr. 884] (by which the trial court undoubtedly felt bound) that an unlawful homicide may be reduced to involuntary manslaughter on the basis of diminished capacity caused by voluntary intoxication only if by reason of the intoxication the defendant is rendered unconscious.[5]

Subsequent to the trial of this case the California Supreme Court, overruling *People v. Roy, supra,* and the line of cases it typified, held that a defendant is entitled to instructions on involuntary manslaughter in the context of diminished capacity where there is evidence that defendant's mental capacity is diminished from voluntary intoxication notwithstanding that by reason thereof defendant was not rendered unconscious. (*People v. Ray* (1975) 14 Cal.3d 20, 27-31 [120 Cal.Rptr. 377, 533 P.2d 1017].) Thus, from the evidence in the record before us, even though not

---

[4]For that reason, the deletion by the trial court of the last paragraph of CALJIC No. 8.77 from the instructions to the jury was harmless. That paragraph declares that the jury cannot convict of either murder or voluntary manslaughter where it concludes that by reason of diminished capacity defendant did not harbor malice aforethought or have the intent to kill.

That part of CALJIC No. 8.77 which was given was from the 1974 revision of the instruction and fully advised the jury on the relationship of diminished capacity to implied malice as follows: " . . . if you find that the defendant's mental capacity was diminished to the extent that you have a reasonable doubt whether he was able to form the mental states constituting either express or implied malice aforethought, you cannot find him guilty of murder of either the first or second degree. If you have a reasonable doubt whether he was able to form an intention unlawfully to kill a human being, you cannot find that he harbored express malice. Further, if you have a reasonable doubt (1) whether his acts were done for a base, antisocial purpose, or (2) whether he was aware of the duty imposed on him not to commit acts which involve the risk of grave injury or death, or (3) whether he did act despite that awareness, you cannot find that he harbored implied malice." (CALJIC 1974 Cumulative Pocket Part.)

[5]CALJIC No. 8.47, the only standard CALJIC instruction designed to advise the jury of the relationship between involuntary manslaughter and voluntary intoxication-induced diminished capacity, is expressly addressed to situations where the defendant kills while unconscious from voluntary intoxication.

demonstrating unconsciousness, defendant was entitled to a jury fully instructed on the offense of involuntary manslaughter based both upon its statutory definition and its decisional permutation. ■ "It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case." (*People* v. *St. Martin* (1970) 1 Cal.3d 524, 531 [83 Cal.Rptr. 166, 463 P.2d 390].)

■ The failure to instruct fully on the relationship between diminished capacity and involuntary manslaughter was error but not necessarily prejudicial. The prejudicial effect of such error is evaluated by determining whether the factual questions that would be presented by the missing instruction were nonetheless resolved adversely to defendant under other, properly given instructions. If so, defendant is not prejudiced by a failure to instruct completely "since the evidence that would support a finding that only the lesser offense was committed has been rejected by the jury." (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 721 [112 Cal.Rptr. 1, 518 P.2d 913].)

Here the jurors were instructed on the elements of murder (CALJIC No. 8.10) and the definitions of express and implied malice (CALJIC No. 8.11).[6] They were told that the element of malice distinguishes murder from manslaughter (CALJIC Nos. 8.37, 8.50) and that a reasonable doubt whether the killing was murder or manslaughter must be resolved by finding the lesser offense (CALJIC No. 8.72). The jury was also instructed that a necessary element in the crime of murder is "the specific intent to kill with malice aforethought" and that if the jury had reasonable doubt whether defendant, because of intoxication, was capable of forming such specific intent, he must be given the benefit of that doubt (CALJIC No. 4.21, as adapted). We conclude that the instructions fairly and fully presented the issue of malice to the jury in all of its more traditional ramifications as well as in the context of diminished capacity. We further conclude that the verdict of guilty of second degree murder by a jury so instructed carries within it an implicit rejection of defendant's evidence of voluntary intoxication offered as tending to negate malice aforethought. Moreover, the jury was instructed

---

[6]The trial court deleted that part of CALJIC No. 8.11 that provides that malice is implied "when the killing is a direct causal result of the perpetration or attempt to perpetrate a felony inherently dangerous to human life."

on three occasions that an essential element of the crime of murder in the absence of which defendant could not be convicted thereof was "the specific intent to kill with malice aforethought."[7] The second degree murder (implied malice) instruction (CALJIC No. 8.31) was also given the jury. It is, of course, inconsistent with the instructions just adverted to relating to specific intent to kill in that it advises the jury that such intent need not be established where the killing is accompanied by implied malice. However, such inconsistency is of no aid to defendant. Given the oft-repeated instructions that specific intent to kill is an element of murder, the likelihood is that the jury's verdict included an implied finding of specific intent to kill and thus an implied repudiation of defendant's evidence of diminished capacity offered to negate that specific intent. Alternatively, if the finding of murder was unaccompanied by a finding of specific intent by the jury, it was then necessarily based on the formulation contained in CALJIC No. 8.31 requiring a finding of implied malice, inherent in which is a rejection of evidence of diminished capacity to refute malice.[8] Accordingly, we hold that the failure completely to instruct on involuntary manslaughter was not prejudicial to defendant. (See *People* v. *Sedeno, supra,* 10 Cal.3d at pp. 720-721.)

■ Defendant contends that the trial court should have given on its own motion instruction No. 16.834 (CALJIC (Misdemeanor) 1971 ed.) on the presumption of intoxication.[9] This instruction is predicated upon Vehicle Code section 23126, which provides in part as follows: "(a) Upon the trial of any criminal action, or preliminary proceeding in a criminal

---

[7]The quoted language was contained in the following instructions: CALJIC No. 2.02 (as adapted), sufficiency of circumstantial evidence to prove specific intent; CALJIC No. 3.31 (as adapted), concurrence of act and specific intent; and CALJIC No. 4.21 (as adapted), voluntary intoxication, when relevant to specific intent.

[8]No contention is made that the instructions given do not adequately relate diminished capacity to implied malice although the definitions given the jury of implied malice (CALJIC No. 8.11) and murder grounded on implied malice (CALJIC No. 8.31) do not reflect the teaching of *People* v. *Poddar* (1974) 10 Cal.3d 750, 757-761 [111 Cal.Rptr. 910, 518 P.2d 342] (see, e.g., 1974 revisions of CALJIC Nos. 8.11 and 8.31 contained in 1974 cumulative pocket part to CALJIC). There is no error, however, because defendant did not request more specific instructions. (*People* v. *Poddar, supra,* at p. 760.) Moreover, as heretofore pointed out (fn. 4, *ante*), the jury was instructed in terms of the current version of CALJIC No. 8.77 as amended to incorporate the *Poddar* language.

[9]That instruction provides: "If the evidence establishes beyond a reasonable doubt that the amount, by weight, of alcohol in the defendant's blood was one tenth of one percent (0.10%) or more at the time of the test as shown by a chemical analysis of his blood, breath, or urine, you should find that the defendant was under the influence of intoxicating liquor at the time of the alleged offense, unless from all the evidence you have a reasonable doubt that he was in fact under the influence of intoxicating liquor at the time of the alleged offense."

action, arising out of acts alleged to have been committed by any person *while driving a vehicle* while under the influence of intoxicating liquor, the amount of alcohol in the person's blood at the time of the test as shown by chemical analysis of his blood, breath, or urine shall give rise to the following presumptions affecting the burden of proof:

" . . . . . . . . . . . . . . . . . .

"(3) If there was at that time 0.10 percent or more by weight of alcohol in the person's blood, it shall be presumed that the person was under the influence of intoxicating liquor at the time of the alleged offense. . . ." (Italics added.)

Without citation of authority, defendant would have this court apply the statutory "drunk driving" presumption to establish a defense in a situation not covered by the plain meaning of the statute. Defendant obviously seeks the benefit of this presumption to establish a degree of intoxication that would bolster the credibility of his diminished capacity defense. However, the level of intoxication at which one is presumed to be under the influence of intoxicants so as to impair his ability to drive a vehicle is not relevant to a defense of diminished capacity in a murder prosecution. The court was clearly under no duty so to instruct.

### DISTRICT ATTORNEY'S CLOSING ARGUMENT

Defendant contends that the district attorney's closing argument to the jury contained comment upon his failure to testify of the kind prohibited by *Griffin* v. *California* (1965) 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229]. Two particular passages are singled out for condemnation. To preserve the context, we quote somewhat more extensively from the district attorney's argument than does defendant in his brief. The portions of which defendant complains are identified by italics. The district attorney stated: "I wanted to talk just a little bit about counsel's remarks about a lot of issues, a lot of conflicts. *What conflicts are there in this case? This is a kind of a unique case, there are no conflicts to speak of. Are there any conflicting witnesses as to what happened?* The whole evidence in this case is consistent with exactly what happened at what time or the approximate time.

" . . . . . . . . . . . . . . . . . .

"This was the point that he [defense counsel] claimed that you cannot rely on Joe Machado's testimony. *I submit that the evidence is consistent*

*in this case and there is no confliction. There is not two or four or five witnesses saying it's this way, it's this way and it's that way. The evidence before this court is consistent and the evidence of Joe Machado indicates that he was very, very reliable in the details and in the description of what he observed."*

Defendant makes the point that since the crime was witnessed by just three persons, one of whom, Machado, testified for the People and one of whom, the victim, is dead, the only other eyewitness who could have testified but did not was the defendant. The prosecutor's reference to lack of conflicting witnesses, defendant maintains, is an impermissible allusion to his failure to testify. There are no cases to our knowledge in which the point at issue has been directedly presented and authoritatively decided. Support for this resourceful but rather fanciful analysis is thus sought from dicta in *People* v. *Northern* (1967) 256 Cal.App.2d 28 [64 Cal.Rptr. 15]. There, a similar argument was made to which the court briefly referred in passing, observing, however, that the appeal turned not upon the validity of that contention, which the court apparently found somewhat intriguing, but upon the import of direct references to defendant's failure to testify. The court then found *Griffin* error in the prosecutor's statements that the evidence had "not been refuted by the Defendant;" that "no evidence [had been] offered by the Defendant" although "the defense has an opportunity" to do so (at p. 30).

In *People* v. *Vargas* (1973) 9 Cal.3d 470 [108 Cal.Rptr. 15, 509 P.2d 959], the Supreme Court found *Griffin* error in the prosecutor's statement that " 'there is no denial at all that they [the defendants] were there' " [committing the crime] (at p. 476). Emphasizing the use of the word "denial," the court regarded the vice of the comment to be in the personal reference to defendants themselves implied by the use of that term. The court gathered support for this analysis from other cases (including *People* v. *Northern, supra*) in which *Griffin* error had been found, in all of which the prohibited comment unmistakably, if not expressly, focused upon defendant personally as distinguished from a more generalized critique of the state of the evidence only tangentially suggestive of defendant's failure to testify. (*People* v. *Vargas, supra,* 9 Cal.3d at p. 476.)

*Griffin* does not preclude a prosecutor from commenting on the state of the evidence or the defendant's failure to call logical witnesses or introduce material evidence. (*People* v. *Vargas, supra,* 9 Cal.3d at p. 475.) "[A] prosecutor is justified in making comments in rebuttal, perhaps

otherwise improper, which are fairly responsive to argument of defense counsel and are based on the record." (*People* v. *Hill* (1967) 66 Cal.2d 536, 560 [58 Cal.Rptr. 340, 426 P.2d 908].)

The defendant's argument consisted in significant part of an attack upon the credibility of the witness Machado, and the alleged inconsistency between his testimony and other evidence. Defense counsel on several occasions referred forcefully (it would appear from the context) to conflicts in the evidence. Having, as it were, "picked his ground" upon which to join issue, it is understandable that the district attorney, in rebuttal, would seek to meet defense counsel on his own ground. The prosecutor is not relegated to dumb show in response to defense counsel's argument. The particular statements here complained of are obvious, straightforward efforts to rehabilitate Machado particularly and the People's case generally. No direct personal reference to defendant was made. If by some involuted process of reasoning the district attorney's remarks may nonetheless be viewed as a reference to defendant's silence, the reference is too tenuous and tangential to fall within the ambit of *Griffin*. That counsel did not object to the district attorney's remarks when made is not so indicative of a conscious choice of trial tactics as it is of the abstruse nature of the assumed ground for objection. Nevertheless, had counsel made timely objection, the trial court, by appropriate instruction, could easily have dissipated any improper apprehension by the jury of these very brief and mild remarks. (See *People* v. *Vargas, supra,* 9 Cal.3d at pp. 474, 479; cf. *People* v. *Gaulden* (1974) 36 Cal.App.3d 942, 955 [111 Cal.Rptr. 803].) In any event, we observe that the court's instructions to the jury given immediately upon close of the prosecutor's argument included, at defendant's request, the standard instructions upon defendant's right to refrain from testifying, from the exercise of which no inference of guilt may be drawn. (CALJIC Nos. 2.60 and 2.61.)[10] There was no error in the prosecutor's argument to the jury.

---

[10]The instructions as given follow:

"It is a constitutional right of a defendant in a criminal trial that he may not be compelled to testify. You must not draw any inference of guilt from the fact that he does not testify, nor should this fact be discussed by you or enter into your deliberations in any way." (CALJIC No. 2.60.)

"In deciding whether or not to testify, the defendant may choose to rely on the state of the evidence and upon the failure, if any, of the People to prove every essential element of the charge against him, and no lack of testimony on defendant's part will supply a failure of proof by the People so as to support a finding against him on any such essential element." (CALJIC No. 2.61.)

## SUFFICIENCY OF THE EVIDENCE

 Defendant contends that the evidence is insufficient to support the second degree murder conviction on two grounds. He argues first that the evidence showed a quarrel between the victim and himself which would operate to reduce the crime from murder to manslaughter, and second, that evidence of diminished capacity should similarly reduce the crime from second degree murder to voluntary manslaughter. We consider the standards by which an appellate court evaluates the evidence when the sufficiency thereof to sustain a conviction is challenged.

 It is settled that before a judgment may be set aside, " 'it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. . . .' " (*People* v. *Newland* (1940) 15 Cal.2d 678, 681 [104 P.2d 778].) The appellate court must view the evidence in a light most favorable to the judgment and assume the existence of every fact reasonably deducible from the evidence. (*People* v. *Sweeney* (1960) 55 Cal.2d 27, 33 [9 Cal.Rptr. 793, 357 P.2d 1049]; *People* v. *Cook* (1968) 263 Cal.App.2d 638, 641 [69 Cal.Rptr. 824].) "If the circumstances reasonably justify the [conviction], the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination . . . ." (*People* v. *Newland, supra,* 15 Cal.2d at p. 681; *People* v. *Robles* (1962) 207 Cal.App.2d 891, 895 [24 Cal.Rptr. 708].) The function of the reviewing court is not to determine whether or not guilt was proved beyond a reasonable doubt, but whether "there is substantial evidence to warrant the finding of guilt by the jury, . . . ." (*People* v. *Hernandez* (1971) 19 Cal.App.3d 411, 420 [96 Cal.Rptr. 854]; *People* v. *Mosher* (1969) 1 Cal.3d 379, 395 [82 Cal.Rptr. 379, 461 P.2d 659].)

The crucial distinction between murder and manslaughter is that malice aforethought is an element of the former. (Pen. Code, §§ 187, 192.) The jury could have found malice from the fact that defendant assaulted the victim with a deadly weapon resulting in death, concluding that the assault was neither justified, influenced by heat of passion, nor the act of one incapable through inebriety of entertaining malice. Malice may be implied from a felonious assault without justification or mitigating circumstances. (*People* v. *Butts* (1965) 236 Cal.App.2d 817, 827 [46 Cal.Rptr. 362]; *Jackson* v. *Superior Court* (1965) 62 Cal.2d 521, 526 [42 Cal.Rptr. 838, 399 P.2d 374].)

Moreover, the evidence does not suggest a quarrel resulting in provocation followed by a killing motivated by the heat of passion. Furthermore, evidence of defendant's intoxication, essential to a diminished capacity defense, was sketchy at best. Accordingly, we cannot fault the jury's decision to reject it.

## DEFENDANT'S STATEMENT AND BLOOD ALCOHOL LEVEL

█ Defendant contends that his post-arrest statement to Officer Crowder that he "had a couple of beers," as well as the results of the breath alcohol tests given him, should not have been received in evidence because prior thereto he had not been advised of nor had he waived his rights (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]). The elicitation of defendant's statement occurred after defense counsel first broached the subject of defendant's intoxication in cross-examination of Officer Crowder in an obvious effort to establish that defendant was under the influence of alcohol at the time of the killing. The cross-examination developed that upon arrest defendant had a strong odor of alcohol on his breath, as a result of which he was given two successive breath alcohol tests disclosing blood alcohol levels of .11 and .12, respectively.

Thereafter, on redirect, Officer Crowder testified that at the time the breath tests were given, defendant stated that he "had a couple of beers." There was no objection for lack of proper foundation until after this testimony was received although the preceding questions were obviously prefatory to elicitation of an admission. After the objection, however, Officer Crowder testified that he did not ask defendant any questions other than whether he would submit to a breath test (defendant replied that he would) and that defendant volunteered a statement about his drinking. At that point the matter was dropped and not again adverted to. There was no motion to strike the testimony to which belated objection had been made. Accordingly, we conclude that counsel was satisfied that adequate foundation therefor had been laid.

█ Volunteered statements of a defendant as distinguished from those the product of custodial interrogation, are admissible notwithstanding a lack of prior *Miranda* warning and waiver. (*People* v. *Quicke* (1969) 71 Cal.2d 502, 513-514 [78 Cal.Rptr. 683, 455 P.2d 787].) █ Furthermore, even assuming that admission of defendant's statement constituted error, it was clearly nonprejudicial. Defendant's

level of inebriety was relevant only to the defense of diminished capacity. In addition to defendant's statement relative thereto, the evidence thereon consisted of the results of the breath tests, expert opinion that a person with a .13 blood alcohol level would be under the influence to the extent that his speech, vision, and coordination would be somewhat impaired, the strong odor of alcohol on defendant's breath noted by Officer Crowder, Crowder's observation that defendant's physical and mental faculties did not appear to be impaired and Machado's testimony that as defendant walked he staggered "just a little bit, not very much," and, in his opinion, "seemed like he [defendant] had more than one" beer. Considering the impact of the challenged admission in the context of the totality of evidence upon the issue to which it had relevance, any error in its admission was harmless beyond a reasonable doubt. (*Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065].)

Defendant cites no authority for his assertion that evidence of his blood alcohol level should have been excluded. The Fifth Amendment protects communicative or testimonial evidence, but does not embrace the use of the suspect's body as a source of physical evidence. Likewise, the Sixth Amendment affords no basis to deny admission of evidence of intoxication derived from examination of defendant's body. (See generally, *Schmerber* v. *California* (1966) 384 U.S. 757, 760-766 [16 L.Ed.2d 908, 913-917, 86 S.Ct. 1826]; *United States* v. *Wade* (1967) 388 U.S. 218, 227-228 [18 L.Ed.2d 1149, 1157-1158, 87 S.Ct. 1926].) Moreover, evidence of the blood alcohol levels was elicited by defense counsel. There was no error in admitting evidence of the defendant's blood alcohol level.

## Verdict Forms

 Defendant contends that the trial court committed prejudicial error by failing to inform the jury that it would receive a "not guilty" verdict form at the same time the jury was advised of the forms it would receive for guilty verdicts. This oversight, however, was immediately rectified by the court after consultation with counsel at bench. The error, immediately corrected, could not have prejudiced defendant, particularly in view of the court's instruction that the jury was to draw no inference from anything said or done by the court. (CALJIC No. 17.30.)

Defendant further argues that the trial court should have given the jury a "not guilty" verdict form for each offense for which it received a

"guilty" verdict form. The trial court instead gave the jury one "not guilty" verdict form, to be used in the event of an acquittal. There is no error in such a procedure. *People* v. *Schindler* (1972) 23 Cal.App.3d 369 [100 Cal.Rptr. 110], relied upon by defendant, is inapplicable on its facts and therefore does not require further discussion.

## PHOTOGRAPHS

Two photographs of the victim, People's Exhibits Nos. 1 and 2, were received in evidence, the latter over the defendant's objection that it was "repetitive and accumulative." People's No. 1 was offered for identification of the victim and to show some injuries to his ear. Defendant specifically renounced any objection to Exhibit No. 1. People's Exhibit No. 2, taken from a slightly different angle, depicted the entry wound and was offered and, when received, was used in conjunction with the testimony of the autopsy surgeon to demonstrate the trajectory of the bullet. At the hearing on defendant's objection to Exhibit No. 2, the prosecutor observed without contradiction that it was not "a good identification photo."

Defendant now contends that admission of Exhibit No. 2 constituted prejudicial error in that he had not disputed the cause of death and therefore admission of the photograph would serve only to "inflame" the jury.

It is well established that the admission of photographs is a matter within the sound discretion of the trial court. *(People* v. *Salas* (1972) 7 Cal.3d 812, 819 [103 Cal.Rptr. 431, 500 P.2d 7, 58 A.L.R.3d 832]; *People* v. *Nye* (1969) 71 Cal.2d 356, 369-370 [78 Cal.Rptr. 467, 455 P.2d 395].) Here both photographs were viewed by the court before being admitted. Exhibit No. 2 was admissible and used to assist the jury in its understanding of the autopsy surgeon's testimony. No abuse of the trial court's discretion is established.

The judgment is affirmed.

Friedman, J., and Janes, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 30, 1975.