[Crim. No. 37608. Second Dist., Div. Five. Apr. 26, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
JEROME GOODALL et al., Defendants and Appellants.

COUNSEL

Robert A. Scott, Philip A. Zywiciel, Robert E. Moore, Jr., and Quin Denvir, State Public Defender, under appointments by the Court of Appeal, Richard A. Curtis and Cheryl Lutz, Deputy State Public Defenders, for Defendants and Appellants.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Gary R. Hahn and Richard B. Cullather, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

ASHBY, J.—By jury trial appellants Jerome Goodall, Cassandra Goodall, Clifford Johns, and Paula Watkins were convicted on three counts:

possession of piperidine and cyclohexanone with intent to manufacture phencyclidine (PCP) (Health & Saf. Code, § 11383, subd. (b)), possession for sale of PCP (Health & Saf. Code, § 11378.5), and manufacture of PCP (Health & Saf. Code, § 11379.5), and they were each sentenced to state prison. They appeal from the respective judgments.

On July 9, 1979, a couple representing themselves as Jerry Gowens and Sandra Gowens rented from Mr. and Mrs. Potts the condominium at 302 Vineyard in Oxnard. Mr. and Mrs. Potts identified appellant Jerome Goodall as the same "Jerry Gowens." Mrs. Potts identified appellant Cassandra Goodall as the same "Sandra Gowens," although Mr. Potts testified she was not. Cassandra is Jerome's wife.

Robert Boyd, a fingerprint technician with the Ventura County Sheriff's Department, lived in a neighboring condominium. He saw Jerome and Cassandra Goodall move into No. 302 in July. One afternoon in October he observed a red and white van parked next to the trash dumpster, which was in front of No. 302. The doors of the van were open and several adult males, including Jerome Goodall, were going in and out of the apartment, working from the van. Later that evening he observed Jerome Goodall open his garage and then emerge, carrying in one hand a one-gallon brown glass bottle and in the other hand a green five-gallon can with a white triangular label. Jerome Goodall handed the green can to someone in the van.

During the afternoon of November 11, 1979, Boyd observed a new gold and black Dodge van drive up to 302 Vineyard. The van parked, left shortly thereafter, and returned in about one-half hour. Appellants Cassandra Goodall and Paula Watkins got out of the van and went inside the residence. Later that afternoon, Mr. Boyd also saw appellants Jerome Goodall and Clifford Johns around the apartment. Around 5:40 p.m. Boyd took his trash to the trash dumpster and noticed a strong odor of ether. The odor was strong at the dumpster, but was not coming from the dumpster. Mr. Boyd walked past the fenced patio to No. 302, finding the odor strongest there, which irritated his lungs and eyes. The odor was hugging the ground and permeating the entire area. He looked through the wrought iron gate into the patio and saw Jerome Goodall standing there, peering at him. Near the sliding glass doors Clifford Johns had a garden hose in his hand and was washing out a five-gallon water bottle (such as used by bottled water companies) by spraying into it. Boyd, who from his occupation had some familiarity with evidence of PCP labs, returned home and notified the Oxnard Police Department

and the Ventura Sheriff's Department of his suspicion that PCP was being manufactured.

Soon a black and white Oxnard police car driven by Officer Jackson arrived and parked near No. 302. Mr. Boyd went out to suggest to Officer Jackson that he move the police car to a less conspicuous place, when he saw appellant Paula Watkins come out of the residence walking toward the van. She looked at the police car and promptly returned inside the residence. In a subsequent statement to police, Watkins admitted that when she went back in the house she stated, "The cops are outside."

After the police car was moved, Mr. Boyd and Officer Jackson returned to the area and observed a great deal of activity. Unidentifiable people were going in and out the front door, moving toward the van and toward the dumpster. Several objects were thrown over a wall into the dumpster enclosure. Two or three individuals gathered near the side of the van for a short time then returned inside the house.

Detective Skeeters of the Oxnard police arrived in an unmarked car shortly after 6:30 p.m. He saw three persons standing by the passenger side of the van, Cassandra Goodall, Johns, and Watkins. At about this time Mr. Boyd observed Jerome Goodall jump through the screen window at the side of the residence and run away, but he was apprehended by Officer Sakamoto.

The rear door of the van was open. The odor of ether was strong. Detective Skeeters observed two trash bags in the van, one of which was partially open, revealing two 5-gallon containers, one of which had a red insignia indicating "flammable" and the word "Ether." Appellant Watkins stated, "Hey, whatever is in that van is not of my doings. [¶] .... [¶] ... The only thing I did was drive these guys up from Pasadena and I'm going back." She gave consent to a search of her van.

Deputy Sheriff Kipp searched the van and found the following chemicals used in the manufacture of PCP: sodium cyanide, bromo benzene, piperidine, magnesium turnings (shavings), petroleum ether in a container marked "Mallinckrodt" (a manufacturer), iodine crystals, and sodium bisulfite. Also in the van were prescription bottles for Jerome Goodall and photos of Watkins and Johns together. In the trash dumpster was found a trash bag with a brown bottle and a brown substance the consistency of pudding smelling of ether.

Detective Skeeters was familiar with the danger of fire or explosion in clandestine PCP labs. He notified the fire department and local military bomb squad. He informed Jerome Goodall of his concerns and his desire to enter the apartment immediately to take precautions against fire or explosion. Detective Skeeters, Jerome Goodall, and several other personnel from the bomb squad and fire department entered the apartment. The smell of ether fumes was overpowering. As the officers looked in the kitchen to see if that was the source of fumes or an area of possible explosion, Jerome Goodall stated, "I wasn't cooking any PCP in the house. The smell you smell is coming from the patio area." On the patio, Detective Skeeters observed a water hose, plastic buckets containing a foamy liquid material, five-gallon water bottles and pools of water and foamy liquid.

A subsequent search of the residence and garage disclosed the following: two apple juice bottles containing one and a half gallons of PCP, found in a suitcase just inside the front door, bromo benzene, hydrochloric acid, and piperidinocyclohexanone carbonitrile (PCC, an essential compound in manufacturing PCP, produced by combining cyclohexanone and piperidine with cyanide and sodium bisulfite), and PCP residue in one of the buckets. PCC has no chemical use except for manufacturing PCP. Male and female clothing was found in the master bedroom closet, and feminine toiletries were in the bathroom.

There was expert testimony that the one-and-a-half-gallon quantity of PCP was possessed for sale. Thousands of cigarettes could be dipped in such a quantity.

Appellants Cassandra Goodall, Watkins, and Johns subsequently made statements to Deputy Sheriff Perkins. Cassandra Goodall stated that she had arrived at the residence just before dark. She had gone inside and remained in the residence the whole time. She went into the back bedroom and watched television with her child.[1] She had been to the residence once before, two or three months previously. She smelled something funny, but presumed it was coming from outside. She would not recognize PCP if she saw it, she had never seen it being manufactured before, and she had only once been in the presence of a person who smoked it. She lived in Oakland and was only there to visit her son. She thought a "Sandra White" lived there.

---

[1]Deputy Kipp testified there was no TV in the bedroom. The only TV was in the living room.

Appellant Paula Watkins told Deputy Perkins that she had arrived just before dark. She had been at the residence on one other occasion and had left some clothes there. She left the apartment twice to go shopping. After returning from the second shopping trip she went inside and came back out to pick up a coat, when she observed the police car and went back in stating, "The cops are outside." She had smelled something strong and nasty but did not ask the others what it was. She had smelled PCP before when she lived in Pasadena. She observed two boxes and one plastic bag in her van. The gasoline for her van had been paid for that day.

Appellant Johns was under the influence of a drug when arrested at the scene. Later he told Deputy Perkins that he had arrived in the van at about dark. He was being driven to Oxnard to look for a ride home. He slept in the van and also slept in the residence. He did not carry anything from the van to the residence or the residence to the dumpster. He did not know anything about the patio being hosed off. He had no knowledge of any PCP at the residence.

The prosecution introduced evidence of two uncharged prior incidents. The "Roxton" incident was admitted only against Jerome and Cassandra Goodall. The "Waverly" incident was admitted only against Cassandra Goodall and Clifford Johns.

In the early morning hours of April 5, 1979, Los Angeles County sheriffs entered a residence at 14924 Roxton in Gardena. Pursuant to a search warrant, they found in the residence and garage an apple juice jar containing liquid PCP, sodium cyanide, magnesium shavings, sodium bisulfite, a triple beam scale, plastic baggies, gasoline cans, a green five-gallon can labeled Mallinckrodt ether, more five-gallon metal cans with a red flammable liquid insignia, numerous five-gallon water bottles, cyclohexanone, iodine crystals, bromo benzene, hydrochloric acid, and PCP. In the opinion of an expert this was a PCP lab.

The following items were also found at that residence: an unsigned copy of a four-page typewritten lease for the premises naming Jerry J. W. Goodall and Casandra (*sic*) Goodall as tenants, a receipt dated March 3, 1979, for the March and April rent, received of Jerry Goodall and Cassandra Goodall, a moving company receipt for goods delivered to Mr. and Mrs. J. W. Goodall, November 27, 1978, at 14924 Roxton, signed Cassandra Goodall, an unlawful detainer summons directed to Jerry J. W. Goodall and Casandra (*sic*) Goodall, the California driver's

license of Cassandra Bennett (apparently identifiable as Cassandra Goodall from the photo), three letters addressed to Jerry W. Goodall at a post office box address, numerous photos of Jerome and Cassandra Goodall, and clothing for an adult male, an adult female, and a child. Some of the male clothing was monogrammed "JW." Neither Jerome nor Cassandra Goodall was present. Two other persons were arrested in connection with this incident, Veronica Brimm and Cynthia Singleton aka Cynthia Johnson. Two gas bills in the name of Cynthia Singleton were found at the residence.

On May 21, 1979, Los Angeles County sheriffs attempted to serve an arrest warrant at 3461 Waverly, apartment 203, Los Angeles. When Deputy Reed knocked on the door, a male voice asked who it was, and when the deputy announced he had an arrest warrant for Jerome and Cassandra Goodall he heard footsteps running away from the door. Upon hearing the sound of running water, Deputy Reed forced the door and found Clifford Johns standing at the kitchen sink pouring the contents of two bottles down the drain. The deputies were able to collect some of the liquid before it drained away and it was subsequently analyzed to contain PCP. There was a smell of ether in the apartment, strongest at the sink. Also found at the apartment or its subterranean garage were: a five-gallon drum of Mallinckrodt petroleum ether, bromo benzene, magnesium turnings, iodine, several five-gallon water bottles and a brown Sherman cigarette containing PCP. Cassandra Goodall was seated at the dining room table twenty feet away from Clifford Johns, holding a two- to three-year-old child. Also seated at the table were John Williams and Ronald Mines. Photos of Clifford Johns and letters to Clifford Johns were also found. There was female clothing in the bedroom.

None of the appellants testified at trial. A photographer testified on behalf of Jerome Goodall, for the purpose of impeaching the testimony of Mr. Boyd and the police officers regarding their ability to view the events on the evening of November 11. Evidence was presented on behalf of Paula Watkins to the effect that she had difficulty borrowing money to buy the van, the implication being that the van was not the proceeds of a profitable PCP manufacturing operation. Evidence was presented on behalf of Cassandra Goodall to the effect that she had moved to Oakland in June 1979 to live with her mother and grandmother; that the signature Sandra Gowens on the lease for 302 Vineyard was not Cassandra's handwriting; and that she had come to Oxnard to visit her young son who was living with Jerome, whom she was planning to divorce.

In four separate briefs, appellants raise numerous contentions.

## SEVERANCE

■ Jerome Goodall and Paula Watkins contend the trial court erred in denying their motions to sever their trials from that of the other defendants. Watkins argues that she suffered prejudice by being tried jointly, because if she had been tried alone the prior incidents, admissible only against Johns and the Goodalls, would not have been admissible. Jerome Goodall makes a similar argument, pointing out that the Waverly incident would not have been admissible in a trial involving Jerome alone.

Joint trial was eminently proper, since each defendant was charged in each and every count. (Pen. Code, § 1098.) The fact that evidence of other incidents was admissible against some defendants and not others does not require separate trials. (*People* v. *Burns* (1969) 270 Cal.App. 2d 238, 252-253 [75 Cal.Rptr. 688].) Unlike *People* v. *Chambers* (1964) 231 Cal.App.2d 23, 33-34 [41 Cal.Rptr. 551], cited by Watkins, here the trial court carefully instructed the jury at the time the evidence was admitted that it was to be considered only against certain defendants and not others. The instructions were adequate to prevent the sort of prejudice argued by appellants. (*People* v. *Burns, supra,* 270 Cal. App.2d 238.)

## CONTINUANCE

■ Jerome Goodall contends that the trial court erred in denying his motion for a continuance when he learned for the first time that the prosecution intended to introduce evidence of prior incidents. Counsel complained to the trial court on February 27, 1980, that he had assumed until the day before, February 26, that the prosecution did not intend to use the Roxton incident. The prosecutor replied that he himself did not have information about the incident until February 26, and that he transmitted the information to the defense immediately. The court denied a motion for a 30-day continuance.

The first witness for the prosecution was not called, however, until March 5, 1980, and the first witness to the Roxton incident was not called until March 7. There is no showing whatsoever that the intervening one-and-a-half-week delay was inadequate to permit Jerome to

investigate and prepare a defense to the Roxton incident. (*People* v. *Mendoza* (1974) 37 Cal.App.3d 717, 722 [112 Cal.Rptr. 565]; see also *People* v. *Sewell* (1978) 20 Cal.3d 639, 646 [143 Cal.Rptr. 879, 574 P.2d 1231]; *People* v. *Serrata* (1976) 62 Cal.App.3d 9, 15-16 [133 Cal.Rptr. 144, 84 A.L.R.3d 952].)

### ADMISSIBILITY OF PRIOR INCIDENTS AGAINST CASSANDRA GOODALL

■ Cassandra Goodall contends that the Roxton and Waverly incidents should not have been admitted against her. Evidence that on another occasion the accused committed a crime or other act is admissible when relevant to prove some fact other than a disposition to commit such act. (Evid. Code, § 1101, subd. (b).) To prove Cassandra guilty of the charged crimes, the prosecution had to establish her guilty knowledge and intent. Cassandra had told the police essentially that she was just a bystander, that she would not recognize PCP, and that although she was in the residence and smelled something funny, she did not know what was going on. The prior incidents were therefore relevant; they were not cumulative; and the trial court did not abuse its discretion in determining that their probative value outweighed their prejudicial effect. (*People* v. *Harris* (1977) 71 Cal.App.3d 959, 964-965 [139 Cal.Rptr. 778]; *People* v. *Torres* (1950) 98 Cal.App.2d 189, 192 [219 P.2d 480].)

■ Cassandra Goodall's main contention is that the prior incidents should not have been admitted because there was insufficient evidence that she was connected with them. (See, e.g., *People* v. *Albertson* (1944) 23 Cal.2d 550, 577-581 [145 P.2d 7].) We find no merit to this contention.

With regard to the Waverly incident, she contends that nothing more was shown than her presence while Clifford Johns was attempting to pour PCP down the sink drain. She urges such evidence would be insufficient to convict her of a crime committed at the Waverly apartment. That is not the point. It was not necessary to prove that Cassandra committed a crime at the Waverly apartment. (*People* v. *Terry* (1970) 2 Cal.3d 362, 396 [85 Cal.Rptr. 409, 466 P.2d 961].) Her presence at that scene was relevant to establish her familiarity with PCP, whether or not she committed a crime. (*People* v. *Terry, supra*; Evid. Code, § 1101, subd. (b) ["crime, civil wrong, or other act"].)

■ With regard to the Roxton incident, Cassandra Goodall was not present at that location, and she contends that her connection with that residence was established by inadmissible hearsay documents. She refers to the unsigned lease in the name of Jerry J. W. and Cassandra Goodall, the rent receipt to Jerry and Casandra (*sic*) Goodall, the unlawful detainer summons addressed to Jerry J. W. and Casandra (*sic*) Goodall, the moving receipt signed Cassandra Goodall, and Cassandra's driver's license. The trial court evidently agreed with Cassandra that to the extent these documents were not signed by defendants so as to constitute admissions, or authenticated as business records, they would be hearsay for the truth of the matter asserted,[2] because the trial court instructed the jury that the documents were not to be considered by the jury for the truth of the matters contained in the documents but simply for the fact that those documents were found. Cassandra erroneously contends, however, that if the documents were not admissible for the truth of the matters asserted they were irrelevant. We conclude the trial court was correct in determining that the documents and other evidence found at the Roxton residence were relevant for a nonhearsay purpose. (*People* v. *Whittaker* (1974) 41 Cal.App.3d 303, 309 [115 Cal.Rptr. 845].) Without considering the documents for the truth of the matter stated therein, it is relevant that documents bearing appellant's name or other items reasonably identifiable as appellant's were found at the residence. The deputy found numerous photographs of Jerome and Cassandra Goodall at the residence. He found male and female clothing and clothing for a two- to four-year-old child. Cassandra's driver's license was found in a safe in the master bedroom. The other documents were also found in the master bedroom. The jury could infer that these items would not have been so located unless Cassandra had either some dominion and control over the residence or a presence sufficient to give her an awareness of what was going on and a familiarity with PCP. The trial court did not err in admitting the Roxton incident into evidence.

■ Cassandra also contends that in instructing the jury on evidence of other offenses, the court should have added a statement that the prior act or offense must be proved by a preponderance of evidence. Cassandra did not request such a modification of the standard instruction in the trial court, and the court had no duty to amplify the instruction *sua sponte.* (*People* v. *Harris, supra,* 71 Cal.App.3d 959, 966.)

---

[2]See *People* v. *Sanchez* (1972) 24 Cal.App.3d 664, 694, footnote 17 [101 Cal.Rptr. 193].

## SUFFICIENCY OF EVIDENCE—CASSANDRA GOODALL

■ Cassandra Goodall also suggests that even assuming the admissibility of the prior incidents, the evidence is insufficient to support her conviction of the charged crimes. The evidence shows her presence at 302 Vineyard during one of the chemical processes in manufacturing PCP. Her statement to the police that she did not know what was going on was incredible in light of the overpowering fumes of ether in the apartment and the extensive supply of chemicals in the residence. Her statement that she was just watching TV in the bedroom was contradicted by evidence no TV was there. The jury could infer that her statement of unfamiliarity with PCP was deliberately false in light of the prior incidents. There was conflicting evidence that Cassandra Goodall was "Sandra Gowens" to whom the condominium had been leased. ■ In determining whether substantial evidence supports the judgment, the test on appeal is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The appellate court must review the evidence in the light most favorable to the judgment and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. Matters of credibility of witnesses are solely for the jury to resolve. If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant reversal of the judgment. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738]; *People* v. *Reilly* (1970) 3 Cal.3d 421, 425 [90 Cal.Rptr. 417, 475 P.2d 649].) ■ Under the applicable standard, substantial evidence supports the judgment against Cassandra Goodall.

## ADMISSIBILITY OF JEROME GOODALL'S STATEMENT TO POLICE

■ Jerome Goodall contends that his statement "I wasn't cooking any PCP in the house. The smell you smell is coming from the patio area" should have been excluded from evidence on the ground that he had not previously waived his *Miranda* rights. The record amply supports the trial court's finding that Jerome made this statement spontaneously and not in response to any interrogation. (*People* v. *McDaniel* (1976) 16 Cal.3d 156, 172 [127 Cal.Rptr. 467, 545 P.2d 843].) Detective Skeeters testified that although Jerome Goodall accompanied him and other officers who entered for the purpose of preventing fire or explosion, Jerome was not asked where the fumes

were coming from or whether or where PCP was "cooking" and that Jerome spontaneously made his statement.

## INSTRUCTION ON INCLUDED OFFENSE

■ Jerome Goodall contends the court erred in denying his request to instruct the jury that he could be found guilty of simple possession of PCP as a lesser included offense of the possession for sale charged in count II. There was overwhelming evidence that appellant was manufacturing large quantities of PCP. One and a half gallons of liquid PCP was found, enough to dip thousands of PCP cigarettes. In the opinion of the prosecution's expert, this PCP was possessed for sale. This evidence was not contradicted. It is clear that, if guilty at all, appellant was guilty of possession for sale. Therefore the trial court was not required to instruct on simple possession, there being no substantial evidence of simple possession as distinguished from the charged crime. (*People* v. *Pijal* (1973) 33 Cal.App.3d 682, 691 [109 Cal.Rptr. 230]; *People* v. *Ellers* (1980) 108 Cal.App.3d 943, 954 [166 Cal.Rptr. 888].)

## PROSECUTOR'S ARGUMENT TO JURY

■ Cassandra Goodall contends that in his argument to the jury the prosecutor indirectly commented upon the failure of Cassandra to take the stand. The record does not support this contention.

Although *Griffin* v. *California* (1965) 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229], prohibits a prosecutor from commenting upon the defendant's failure to testify, it is not improper for the prosecutor to comment upon the defense's failure to call logical witnesses or to introduce other material evidence contradicting the prosecution case. (*People* v. *Roberts* (1975) 51 Cal.App.3d 125, 135-137 [123 Cal.Rptr. 893]; *People* v. *Gray* (1979) 91 Cal.App.3d 545, 551-553 [154 Cal.Rptr. 555].) Here the prosecutor did no more than that, in his comments that the evidence of the two prior incidents had not been contradicted.[3]

---

[3]"Where is the evidence in contradiction to those incidents in May and in April in 1979 in Los Angeles? ... What contradictory evidence? There were other officers there.... [¶] .... [¶] What did you have in any way to disbelieve Officer Ross or to disbelieve Officer Reed? Absolutely nothing. Their testimony is absolutely uncontradicted in every element. [¶] .... [¶] But what evidence do we have that those incidents in Los Angeles on May the 21st involving Cassandra Goodall and Clifford Johns are not true? Absolutely none. What evidence do you have that that incident wasn't just as the People represented it on April 5th, midnight of April 4th and the early morning hours of April 5th, 1979? Absolutely none."

In the other instance cited by Cassandra, the prosecutor was discussing Mrs. Potts' testimony that when she first saw "Sandra Gowens" whom she believed to be Cassandra Goodall, her hair was different, it was pulled back. The prosecutor argued this was consistent with the picture on Cassandra's driver's license.[4] Appellant complains about the prosecutor's next, apparently sarcastic, comment, "But no, this isn't Cassandra Goodall. If we didn't have this, the defendant would claim Cassandra Goodall has never worn her hair back." We do not believe that this argument about Cassandra's appearance amounted to a comment on Cassandra's failure to testify. Appellant concedes she can cite no authority closely in point. We find appropriate here the language of the court in *People* v. *Roberts, supra,* 51 Cal.App.3d at page 137: "If by some involuted process of reasoning the district attorney's remarks may nonetheless be viewed as a reference to defendant's silence, the reference is too tenuous and tangential to fall within the ambit of *Griffin.* That counsel did not object to the district attorney's remarks when made[5] is not so indicative of a conscious choice of trial tactics as it is of the abstruse nature of the assumed ground for objection. Nevertheless, had counsel made timely objection, the trial court, by appropriate instruction, could easily have dissipated any improper apprehension by the jury of these very brief and mild remarks."

## PENAL CODE SECTION 654

Jerome Goodall, Clifford Johns, and Paula Watkins contend that the judgments violate the proscription against double punishment in Penal Code section 654. The argument is of most practical significance to Jerome Goodall and Clifford Johns, who received consecutive sentences on all counts, totaling seven and two-thirds years.[6]

First, it is argued that count I (Health & Saf. Code, § 11383, subd. (b)), possession of piperidine and cyclohexanone with intent to manufacture PCP, is a lesser included offense of count III (Health & Saf.

---

[4] "... Look at the photograph that was seized on Roxton. Driver's license from the safe. Her hair was pulled back. Just take a look at it and that, remember, was the event closest to the—that was the first time that Mrs. Potts saw Cassandra Goodall there."

[5] This is also true in this case.

[6] Jerome Goodall and Clifford Johns were each sentenced to an upper term of five years on count I (possession of piperidine and cyclohexanone with intent to manufacture PCP) and to consecutive terms of one and one-third years each on counts II and III. Paula Watkins was sentenced to a lower term of three years on count I and concurrent sentences on counts II and III.

Code, § 11379.5), manufacture of PCP, and that therefore the lesser offense should be dismissed. There is no merit to this contention. Section 11383, subdivision (b), is not by its language necessarily included within section 11379.5. Appellants point out that the prosecution experts testified that PCP cannot be manufactured without piperidine and cyclohexanone.. Even so, it would be possible to be guilty of manufacturing PCP without also being guilty of possessing piperidene and cyclohexanone, because a person could aid and abet the manufacture without having actual or constructive possession of the necessary ingredients. (See *People v. Rogers* (1971) 5 Cal.3d 129, 134 & fn. 4 [95 Cal.Rptr. 601, 486 P.2d 129] [one can aid and abet the transportation of a narcotic without possessing it].)

Moreover, there is another reason why count I should not be treated as an included offense of count III for purposes of Penal Code section 654. It is well established that a drug seller who sells only part of his inventory may be convicted and punished separately for the sale of part and the possession for sale of the remainder. (*In re Adams* (1975) 14 Cal.3d 629, 633 [122 Cal.Rptr. 73, 536 P.2d 473]; *People v. Sheldon* (1967) 254 Cal.App.2d 174, 182 [61 Cal.Rptr. 778].) In this case the record supports the conclusion that appellants had manufactured PCP and that they were in possession of additional piperidine and cyclohexanone with intent to manufacture still more PCP. By analogy to the drug seller cases, it was proper to convict appellants on both counts.

 The same analogy also supports separate punishment on all three counts. As interpreted by the courts, Penal Code section 654 precludes multiple punishment where several crimes are committed during an indivisible course of conduct with a single criminal objective. Multiple punishment is permissible if the defendant entertained multiple criminal objectives which were independent of and not merely incidental to each other. The focus of the inquiry is the defendant's intent and objective. (*People v. Beamon* (1973) 8 Cal.3d 625, 637-639 [105 Cal.Rptr. 681, 504 P.2d 905]; *People v. Perez* (1979) 23 Cal.3d 545, 551 [153 Cal.Rptr. 40, 591 P.2d 63, 3 A.L.R.4th 339].)

In this case the trial court could reasonably conclude that appellants intended (1) to manufacture PCP; (2) to sell the PCP they had manufactured, if they could find a buyer; and (3) to manufacture more PCP with the ingredients not used up in step (1). The manufacturing and selling elements in this process clearly involve separate objectives. It would not be proper to subsume the manufacturing into the selling as

merely incidental to a single objective of selling the ultimate product for profit. (See *People* v. *Perez, supra*, 23 Cal.3d at pp. 552-553 [multiple sex offenses not merely incidental to single objective of obtaining sexual gratification; multiple thefts not merely incidental to single objective of obtaining wealth].) The two counts involving manufacturing PCP and possessing piperidine and cyclohexanone may also be separately punished by analogy to the drug seller cases, in circumstances where the court could reasonably conclude that the remaining inventory of chemicals is possessed with intent to manufacture more PCP. Whether appellants maintained multiple criminal objectives is determined under all the circumstances and is primarily a question of fact for the trial court, whose finding will be upheld on appeal if there is any substantial evidence to support it. (*People* v. *Ferguson* (1969) 1 Cal.App.3d 68, 74-75 [81 Cal.Rptr. 418]; *People* v. *See* (1980) 109 Cal.App.3d 76, 80 [167 Cal.Rptr. 128]; *People* v. *Lee* (1980) 110 Cal.App.3d 774, 786 [168 Cal.Rptr. 231]; *People* v. *Murphy* (1980) 111 Cal.App.3d 207, 213 [168 Cal.Rptr. 423].) Had the trial court found that the manufacturing and possession counts were part of an indivisible course of conduct with a single objective, that determination could likewise be upheld. But we cannot say there is no substantial evidence to support the trial court's contrary finding here. The judgments did not violate section 654 in the circumstances of this case.

The judgments are affirmed.

Stephens, Acting P. J., and Hastings, J., concurred.

A petition for a rehearing was denied May 13, 1982, and the petitions of appellants Jerome Goodall and Paula Watkins for a hearing by the Supreme Court were denied July 22, 1982. Kaus, J., did not participate therein.